## STATE OF IOWA;

DES MOINES, DECEMBER TERM, A. D. 1868.

IN THE TWENTY-SECOND YEAR OF THE STATE.

---

PRESENT:

Hon. JOHN F. DILLON, Chief Justice.
" CHESTER C. COLE,
" GEORGE G. WRIGHT, } Judges.
" JOSEPH M. BECK,

---

VIELE v. THE GERMANIA INSURANCE COMPANY.

1. Pleading and practice: CONFESSION AND AVOIDANCE. If the plaintiff, in a case where, under the statute, no replication is allowable, files, under section 2917 of the Revision, a written admission of matters alleged in the defendant's answer, such writing may, and the better practice would dictate that it should, also contain an averment

or notice that the plaintiff relies upon and expects to show on the trial matter in avoidance of the allegations thus admitted.

2. —— TRIAL : WHO HAS·THE AFFIRMATIVE OF THE ISSUE. If, under the state of the pleadings and admissions, the plaintiff is not entitled to recover without the introduction of evidence, the burden of proof is deemed to be on him, and he will be entitled to open and close the trial.

3. —— CONSOLIDATION OF CAUSES. A policy of insurance executed by four companies, stipulated that each acted for itself and would only be liable for one-fourth of the whole amount insured, in case of loss. A loss occurring under the policy, separate actions were commenced against each of the companies for its proportion of the loss as stipulated in the policy. These actions being by the same plaintiff, depending upon the same evidence, defended by the same attorneys, and involving the same defense, a motion was made to so consolidate them as that all should abide the result in one to be tried. This motion was sustained by the District Court ; and, this court being equally divided in opinion, this ruling of the District Court was affirmed by operation of law.

4. Insurance : WAIVER OF CONDITIONS : ESTOPPEL. A condition in a policy of fire insurance, that, if the risk be increased by a change of occupation or other means within the control of the assured, without the written consent of the insurers, " the policy shall be void," being inserted for the benefit of the insurers, they may dispense with a compliance therewith or waive a forfeiture of the policy incurred by a breach thereof, and thereby become estopped from setting up such condition or breach in an action for a loss subsequently occurring.

5. —— WAIVER NEED NOT BE IN WRITING. And such waiver of the forfeiture arising from the breach of the condition need not be in writing, but may be by parol, at least in a case where the policy is not attested by the corporate·seal of the company, and is, hence, not a specialty.

6. —— WHAT WILL AMOUNT TO WAIVER. Any acts, declarations, or course of dealing by the insurers, with knowledge of the facts constituting a breach of a condition in the policy, recognizing and treating the policy as still in force, and leading the assured to regard himself as still protected thereby, will amount to a waiver of the forfeiture by reason of such breach, and estop the company from setting up the same as a defense when sued for a subsequent loss.

7. —— NEED NOT BE FOUNDED ON NEW CONSIDERATION. A waiver of conditions, or forfeiture arising from a breach thereof, need not be founded on any new consideration.

8. —— POWER OF AGENT TO WAIVE FORFEITURE. A local agent of a foreign insurance company, clothed with authority to effect contracts of insurance, to fix rates of premium, to give consent to the increase of risks and change of occupation of buildings insured, to cancel policies on account of increase of risk, and exercise supervision over the property covered by policies issued at his agency, has power to dispense with conditions and waive forfeitures arising from a breach thereof, in the absence of any limitation upon his authority known to the assured.

9. —— IMPLIED AND INCIDENTAL POWERS. The foregoing powers are necessary incidents of the general authority of the agent to effect contracts of insurance, conduct the business at his agency, and do all things necessary and proper in the prosecution thereof.

10. —— WAIVER ARISING FROM FAILURE TO CANCEL. *Semble*, that where, by the terms of the policy, the underwriters reserve the right to cancel it upon the risk being increased, by paying to the assured the unearned premium, and the risk be increased, of which the underwriters have notice, but fail to exercise the right to cancel, this amounts to a waiver of the forfeiture resulting from the breach of the condition against the increase of the risk.

11. —— EXTENT OF WAIVER. A waiver of a forfeiture resulting from a breach occasioned by a change in the occupancy of the building, increasing the risk, extends, not only to breaches occasioned by the occupancy before such waiver, but to those resulting from a continuation of such occupancy.

12. —— CONSENT TO CERTAIN OCCUPANCY CARRIES INCIDENTS. A consent by the insurers to the occupation of the insured building for a certain manufactory, carries with it a consent to the keeping and use on the premises of any article necessary to the manufacture, or commonly used therein, although the keeping of such article is expressly prohibited in the policy. The consent to the manufacture in such case necessarily operates to waive or dispense with the prohibition.

13. —— CONDITIONS CONNECTED WITH CHANGE OF OCCUPANCY. Where the agent of the underwriters, after a change in the occupancy, involving an increase of the risk, consents to the continuance of the policy, on condition that an iron door shall be put into the building, but without limiting any specific time within which this

shall be done, the assured is entitled to a reasonable time. And if, after the exercise of reasonable diligence to get the door put in, the building is destroyed by fire, the company cannot resist the payment of the loss on the ground that the door was not in.

*Appeal from Scott District Court.*

SATURDAY, OCTOBER 10.

ACTION upon a policy of insurance, which, so far as it is material to an understanding of the case, and is not set out in the opinion of the court, is in the following words:

" The Germania Fire Insurance company, the Hanover Fire Insurance company, the Niagara Fire Insurance company and the Republic Fire Insurance company, all of the city of New York, each acting and contracting for itself, and not one for the other or others, in consideration of one-fourth part of the sum of eight hundred and twenty-five dollars, to each of them paid by the assured hereinafter named, do each insure Charles Viele, of Evansville, Indiana, against loss or damage by fire, to the amount of one-fourth part of the sum of fifty-five thousand dollars, for the term of one year, upon the 'Le Claire row' and 'Post-Office block.' * * * Each of said companies agrees to make good to the assured, his executors, administrators and assigns, all such immediate loss or damage, not exceeding in amount the sum insured by such company as aforesaid, as shall happen by fire to the property above specified, from the first day of January, 1865, at noon, to the first day of January, 1866, at noon. * * * In witness whereof, the said companies have respectively caused these presents to be signed by their respective presidents and attested by their respective secretaries, in the city of New York.

" Countersigned by the agent of the above named companies, at Davenport, Iowa, this first day of January, 1865.

" R. SIMPSON & CO., Agents.

" M. HILGER, President,
" JOHN EDW. PAHL, Secretary,
" *The Germania Fire Insurance Co.*
" DORAS L. STONE, President,.
" R. S. WALCOTT, Secretary,
" *The Hanover Fire Insurance Co.*
" JONATHAN D. STEELE, President,
" PETER NOTMAN, Secretary,
" *The Niagara Fire Insurance Co.*
" ROBT. S. HOWE, President,
" D. F. CURRY, Secretary,
" *The Republic Fire Insurance Co.*"

The answer of the defendant admits the issuing of the policy, the loss by fire, notice of loss to defendant, ownership of property in plaintiff, and that there was no further insurance, but sets up the following special defense: That, at the time the policy was issued, the building lost by the fire was used for mercantile purposes, and for "manufacture of materials which were not of an extra combustible nature;" that, after the contract of insurance was entered into, and before the fire, the plaintiff leased portions of the building, to be used for the manufacturing therein of "rustic window shades," without having obtained the written consent of defendant, and contrary to the terms of the policy; that, in the manufacturing of said rustic window shades, pine slats and splinters of wood, benzole, benzine or naptha, varnish, paints, etc., are used, and large quantities of shavings were constantly being made, and other combustible substances created, greatly increasing the risk and hazard of the building insured in said

policy; that such risk and hazard was not covered by the policy, and continued to the time of the fire; that plaintiff paid no additional premium on said policy on account of said increased risk, and defendant waived no rights accruing on account of the same; that, contrary to the terms of the policy, plaintiff permitted benzine to be kept upon the premises; whereby plaintiff lost all right to recover under said policy, and it has become void, etc.

The defendant filed an admission that the burden of proof is on defendant, and that without any proof plaintiff would be entitled to judgment on the pleadings.

Plaintiff moved for the consolidation of the cause with three other causes pending in the same court, each upon the same policy, for the same loss, and respectively against the Hanover, Niagara and Republic Insurance companies, or that all four of said causes abide the event of the one first tried, subject to the same exceptions, motions, etc. This motion was based upon the affidavit of plaintiff's agent, to the effect, that all of said actions are brought upon the same policy of insurance to recover for the same loss; that the same defenses are set up in all of them, and the defendants are represented by the same attorneys in each cause; that the defendants have entered into a mutual arrangement for issuing policies of the kind and character of the one upon which the said suits are based, and have a joint agency, representing all of said companies, called the "Underwriters' Agency," under which the policy sued on was issued, and under which all such joint business is conducted, including the settlement and adjustment of losses and settlements of suits, etc.; that said companies have, under such "Underwriters' agency," a general agent for this State, who attends to the defense of said suits, and who has given personal attention to said suits, and that the attorneys of defendants in all of said actions are employed by said agent of

all of said defendants to defend all of said suits. A like motion was made in each of the other cases, based upon like affidavits. Upon these motions and affidavits, the court ordered, that the other causes abide the event of this cause, and that the same verdict and judgments be entered therein as shall be rendered in this cause, unless defendants should show cause to the contrary, by affidavit, before the conclusion of the trial in this cause. To which defendants respectively excepted.

Before the trial, plaintiff filed an admission to the effect that, after the execution of the policy, and before the loss, the plaintiff, without the consent of defendants in writing on the policy, leased a part of one of the buildings to be used for the manufacture of rustic window shades, and that it was so used and occupied at the time of the loss, and the risk was thereby increased. This admission closes with an averment that plaintiffs will rely upon proving matter in avoidance of the defense therein admitted, which will estop defendants setting up the same. This admission, in the body thereof, sets out that it is "for the purposes only of the trial of the cause at the present term, and for no other purpose." Defendant moved to strike from the files this admission, and for judgment thereon, and that parts thereof be stricken out. These motions were severally overruled and exceptions taken thereto.

The instructions given and refused are sufficiently referred to in the opinion of the court.

Upon motion of plaintiff, the following question was submitted to the jury, and they were instructed to answer the same as a special finding, viz. :

"Did the defendant, by its agent Verder, with knowledge of all the facts claimed by defendant to constitute breaches of the conditions of the policy sued on, by its conduct and language to the plaintiff, or his agent, recog-

nize and treat said policy and the insurance thereby made, as still continuing and in force, and induce the plaintiff, or his said agent, so to regard it?" To which the jury answered: "Yes."

The defendant asked the following questions to be submitted to the jury for special findings, and they were answered accordingly, viz.:

"1. Was benzine kept on the premises in question, after the policy was made, and without the written consent of defendant, in cans for use?" To which the jury answered: "Yes."

"2. Was any additional consideration paid or agreed to be paid by the plaintiff to the defendant on account of the increase of the risk to the building in question?" Answer: "No."

"3. Was any additional premium paid or agreed to be paid by the plaintiff to the defendant for the privilege of keeping benzine on the said premises after the issuing of the policy?" Answer: "No."

"4. Did the defendant, after the increase of the risk as admitted by the plaintiff, conditionally consent to the continuance of the insurance on the building in question? and, if so, was one of such conditions that a new stove and zinc under it should be put in the room, in said building used as a tobacco factory?" Answer: "Yes."

"5. If such was one of the conditions, was such condition complied with by the plaintiff, before the fire in question?" Answer: "Yes."

"6. Did the defendant, after the increase of the risk as admitted by the plaintiff, conditionally consent to the continuance of the insurance on the building in question? and, if so, was one of such conditions that an iron door should be put in a room occupied by one of the rustic window shade factories, in the fourth story of the building in question?" Answer: "Yes."

Viele v. Germania Insurance Co.

"7. If such was one of the conditions, was it ever complied with by the plaintiff before the fire?" Answer: "No."

The court, upon its own motion, required of the jury answers to the following questions, viz.:

"1. If you answer the first question in relation to keeping benzine on the premises 'yes,' then you will also answer the following questions:

"2. Was benzine a necessary or usual article in the manufacture of rustic window shades?" Answer: "Yes."

"3. Was it kept in small quantities for daily use, or was it kept in large quantities? State the quantities usually kept on hand." Answer: "In small quantities, from one to two gallons."

"4. Did the agent of the insurance company give any directions as to the manner of keeping benzine, and, if so, was it kept as he directed?" Answer: "Yes."

"5. If you answer the seventh and last question submitted by the defendant 'no,' you will then answer the following question: Had said iron door been ordered, and had all reasonable efforts been made to have it put up before the fire?" Answer: "Yes."

Plaintiff moved the court to set aside the special verdict of the jury upon question No. 6, because the finding is contrary to the evidence, and also moved for judgment on the general verdict. Defendant moved the court to set aside the special findings upon questions asked by plaintiff numbered one, two, four and five, and upon question five submitted by defendent, and also the general verdict; because, first, such findings are contrary to the evidence; second, because of errors of law in the instructions of the court; third, the verdict and special findings are contrary to law; fourth, because of error in refusing to submit to the jury other questions requested by defendant; fifth, because of error in refusing certain instructions re-

quested by defendant.   The defendant also moved for judgment upon the special findings.   The motions of defendant were overruled and exceptions taken thereto. The motion of plaintiff to set aside the special finding was also overruled and exceptions taken, and judgment rendered upon the general verdict against defendant for the sum of $3,421.80.

Plaintiff appeals from the decision of the court upon his motion to set aside the special verdict of the jury in response to question six of defendant.

Defendant appeals from the rulings, orders and final judgment of the court.

*Davison & True, James T. Lane* and *S. B. Paul*, counsel for the appellant, filed elaborate printed arguments, from which the following points are condensed.

I. The court erred in the admission of certain testimony offered by plaintiff against the defendant's objections.

The policy provides, that, " if the above mentioned premises shall be occupied or used so as to increase the risk, or become vacant and unoccupied, or the risk be increased by the erection of adjacent buildings, or by any other means whatever within the control of the assured, without the assent of the companies indorsed thereon, * * * or if the assured shall keep upon the said premises gunpowder or phosphorus, or petroleum, or rock or earth oils, or benzole, benzine or naptha, or any explosive substance, or shall keep or use upon the said premises camphene, spirits, gas or chemical oils, without written permission on this policy, — then and in every such case this policy shall be void.

That is, the very instrument under which plaintiff claims, stipulates in plain, unmistakable terms, that if the

risk be increased through means within the control of plaintiff without the written assent of defendants indorsed thereon, then and thereupon the policy shall be void.

It is admitted that the risk was so increased through acts of plaintiff without obtaining the requisite written assent, whence it follows that the policy and the insurance then ceased to exist, and the parties then stood toward each other the same as if no insurance had been effected. There cannot be the least doubt that had the fire occurred before the agent of defendant knew of the increase of risk, plaintiff could not have recovered one cent of the insurance. *Lee* v. *Howard Ins. Co.*, 3 Gray, 583 ; *Murphy* v. *The People E. N. F. Ins. Co.*, 7 id. 239.

II. The policy being absolutely void, it could be reinstated and the risk assumed again only by a new consideration.

There is a wide difference between waiving the act before a forfeiture which unwaived would cause the forfeiture, and waiving the forfeiture when once it has taken place, especially if it is for a condition subsequent. The former may be by parol, the latter cannot, unless supported by a consideration. Phillips on Insurance, § 904.

As for instance, had defendant on application of plaintiff, before the increase of risk, orally waived the written assent required therefor, no consideration would have been required to sustain such waiver, it being a condition barely on the happening of which the contract was to cease. But the contract having once ceased to exist, it can be resuscitated only on a consideration moving from the assured to the insurer, or by writing, which implies a consideration.

Phillips on Insurance (vol. 1, p. 8, § 10) states the law to be ; " a policy being forfeited by a violation of some of its conditions, a mere oral waiver of the forfeiture is not

sufficient to revive it, unless some new consideration on the part of the assured supervenes, or some transaction takes place between the parties under the contract importing a waiver,— such, for instance, as would be equivalent to receiving rent from a tenant for a time posterior to the forfeiture of a lease by non-payment of rent."

And again, in section 1040, " the forfeiture of a claim under a policy, by alienation, may be waived in writing, but not by a merely verbal consent to waive it after it has accrued."

In *Smith* v. *The Saratoga County Mutual Fire Insurance Company* (3 Hill, 509), which was an action on a policy that had been assigned notwithstanding the provision that it should become void if assigned without the consent of the company in writing, the court say : " It is said that the defendants by making and collecting assessments upon a premium note after they had notice of the assignment of the policy, have waived the forfeiture and affirmed the continuance of the contract, and this is likened to the case where a landlord after notice of some act or omission by his tenant which gives a right of re-entry, receives or distrains for the subsequent accruing rent, or does some other act by which he plainly affirms the continuance of the lease. This is held to be a waiver of the forfeiture. But this doctrine only applies when the act or omission of the tenant renders the lease voidable, and not where it is declared absolutely void on the happening of a particular event. The distinction is between cases where the landlord may put an end to the lease by an entry for the wrong done, and those where the wrong terminates the lease without any act on the part of the landlord. In the former case the landlord may waive the forfeiture by an act which affirms the continuance of the tenancy ; but in the latter the lease being *ipso facto* void, is incapable of confirmation. *Finch* v. *Throck-*

*morton*, Cro. Eliz. 221; *Mulcany* v. *Eyres*, Cro. Car. 511; *Anon*, 3 Salk. 4, and see Co. Litt. 295, b; *Rickman* v. *Garth*, Jac. 173; *Jones* v. *Verney*, Willes' Rev. 169, 176, 177; *Jenkins* v. *Church*, Cowp. 482; *Doe* v. *Watts*, 7 O. R. 79; *Doe* v. *Rees*, 4 Bing. N. C. 384; *Goodwright* v. *Davids*, Comst. 803.

*Keenan* v. *The Missouri State Mutual Insurance Company* (12 Iowa, 127) is not in conflict with the doctrine laid down above, as the conditions of the policy in the latter case were, that the policy should cease to be effective only so long as the premises were appropriated to uses denominated hazardous, or extra hazardous, while, in the former, the policy became absolutely void by such uses. That is to say, in the one case the insurance was suspended, in the other dead, while the one can be revived by a removal of the cause, the other can only be by a new contract supported by a new consideration.

III. The court submitted to the jury, on the request of the plaintiff, the following special question, viz. : "Did the defendant, by its agent, Verder, with knowledge of all the facts claimed by defendant to constitute breaches of the conditions of the policy sued on, by its conduct and language to the plaintiff or his agent, recognize and treat said policy, and the insurance thereby made, as still continuing and in force, and induce the plaintiff, or his said agent, so to regard it ?"

A party is entitled to a special verdict or finding only upon material facts upon which issue has been joined by the pleadings in the case; and it should be in a form that does not involve a statement of the evidence or conclusion of law. *Hatfield* v. *Lockwood*, 18 Iowa, 296.

The fact called for by the interrogatory is not a material fact under the issues. To be material, it must be either a waiver or an estoppel in law.

Unless, therefore, it was, in effect, a waiver or an estop-

pel, it was immaterial, and tended to mislead the jury. It was neither.

IV. The special questions two and three, given by the court on its own motion, were erroneous; because, inasmuch as the hazardous use of the building, viz., by the rustic window shade manufactory, was wholly unauthorized by the policy, the rule, that the incidental use of a hazardous article, necessarily and commonly used in a business permitted by the policy, does not contravene the general provision prohibiting the keeping or using such hazardous articles (as laid down in *Citizens' Insurance Company* v. *McLaughlin* [Penn.], reported in 6 Am. Law Reg. N. S. p. 374; also 6 Wend. 623; 3 N. Y. 122; 11 id. 554: *Harper* v. *Albany Mutual Insurance Company*, 17 id. 194), does not apply.

Up to the time of the pretended waiver or estoppel, the increased hazard by such use of the building was wholly unauthorized by defendant, and therefore the use of benzine, whether necessary in the business, or in large or small quantities, was in violation of the terms of the policy, and rendered it void.

V. After such waiver or estoppel, which could only apply to the forfeiture that had already occurred, a new forfeiture occurred daily and hourly from the use of this prohibited article, unless the business in which it was necessarily and customarily used was authorized. This could only be done by the written consent of defendant on the policy.

The waiver or estoppel applied only to what was past. Nothing short of a new contract to continue the insurance on the building, with the omission of that condition requiring written consent to such increased hazard, and a verbal consent under such new contract, could authorize the continued use of benzine.

Proof of a mere waiver of forfeiture already occurred,

or estoppel as to an act already passed, is insufficient to authorize a continuing act which creates forfeiture.

An act which creates a single forfeiture may be waived, or a party may estop himself from asserting a fact which occasioned a forfeiture; but it would be stretching the rule beyond all the authorities to say, that proof of such waiver or estoppel, as in this case, was sufficient to authorize the continued use of the building for a hazardous business, in direct violation of the terms of the policy, without any new contract, or any new or additional premium therefor.

VI. The court is bound to submit to the jury special questions, which, if answered favorably, would benefit the party asking for such submission. Rev. § 3079; *Partridge* v. *Gilbert*, 3 Duer, 184; affirmed, 15 N. Y. 601.

The same argument applies to the 3d, 4th and 5th questions requested to be submitted by defendant.

The 12th question ought to have been submitted to the jury, because it sought to elicit from the jury an ultimate fact upon which the whole case turned. The utmost stretch of the evidence, and excluding in this view the testimony of Mr. Verder, where it conflicts with Mr. Newcomb, will no more than cover the bare statement that Mr. Verder consented to the use of the building for the manufacture of rustic window shades if they complied with his directions. It is an unsupported pretense to assert that there was any other waiver.

VII. We affirm with great confidence, that the evidence does not establish such a state of facts as amounts to a waiver of the forfeiture, or an estoppel on the company, or a reinstatement, renewal or revival of the policy.

By the increase of the risk as admitted by plaintiff the policy became absolutely void. Waiver applies only to contracts which are voidable upon the happening or omission of a certain event or contingency. *Smith* v. *The*

*Saratoga County Mutual Fire Insurance Company*, 3 Hill, 508.

In the notes to *Carpenter* v. *Washington Insurance Company* (2 Am. Lead. Cases, pp. 624, 625) the learned editor criticises this case, and says: " The weight of authority in modern times would seem to be clearly the other way," and cites *Clark* v. *Jones* (1 Denio, 516), which was the case of a voidable lease on non-payment of rent; and the same learned judge (BRONSON) held that the collection of rent after the forfeiture, and with knowledge, was a waiver. The editor further says, that " the view taken in *Smith* v. *The Saratoga Mutual Insurance Company* (above) has consequently been overruled by the subsequent course of decision, and the receipt of a part or the whole of the premium by the insurers with full knowledge of a prior forfeiture, held to affirm the contract and restore the policy to its former validity." (Citing *Frost* v. *The Saratoga Mutual Insurance Company*, 5 Denio, 154; *Vial* v. *The Genesee Mutual Insurance Company*, 19 Barb. 440; *Leathers* v. *The Farmers' Mutual Insurance Company*, 4 Foster, 259; *Burbank* v. *The Rockingham Mutual Fire Insurance Company*, id. 550; *Bovier* v. *The Connecticut Life Insurance Company*, 23 Conn. 244.

The case of *Frost* v. *The Saratoga Mutual Insurance Company* was an action on a policy issued by a mutual insurance company. The defense was on the ground of a false warranty, in that the insured, in his application, which was made part of the policy, had untruly stated that there were no buildings within ten rods of the buildings insured, but the insurers, with a knowledge of the loss, and of the inaccuracy of the statement, had afterward made assessments on the premium note given by the insured, which he had paid: *held*, that the insurers, in affirming the validity of the premium note, necessarily affirmed that the policy was also originally valid; and the

court say, "the defendants shall not now be allowed to set up any fact *dehors* the policy, in order to impeach the original validity."

Here was no forfeiture, for the breach of the warranty occurred before the policy ever took effect; and how could that be void through a forfeiture which never had any validity.

*Ames* v. *The New York Union Ins. Co.* (14 N. Y. 253) was a case in which, by the terms of the policy and the conditions annexed, all applications for insurance should be made in writing and specify all incumbrances, etc. No application was signed by the assured, but what purported to be one was filled up by the agent without knowledge of the insured and sent to the company. It contained no notice of any incumbrance. The first policy had been issued by the agent with verbal notice from the plaintiff of the city bank mortgage, and he issued the one in suit as a renewal policy, with full knowledge of such mortgage, the property remaining in the same condition as when first insured. "The defendants took the premium for insuring the plaintiff and issued the policy, well knowing that there had been verbal notice, but none in writing." This was not a forfeiture but an estoppel upon consideration paid.

In the following cases relied upon by the counsel for plaintiff in this suit, the insurance companies were held to have waived conditions in the applications, requiring written notice or consent to certain things, or were estopped from setting up that the contract of insurance, the policy, had never been in force, or had effect; it having been shown that the company, with full knowledge of the breach of the conditions, had received the premium and issued the policy and delivered the same, after such breach and after such knowledge. *Smith* v. *Gugerty*, 4 Barb. 614; *Goit* v. *National Protection Ins. Co.*, 25 id.

190; *Liddle* v. *Market Fire Ins. Co.*, 4 Bosw. 179; *New York Central Ins. Co.* v. *National Protection Ins. Co.*, 20 Barb. 468; *Bigler* v. *New York Ins. Co.*, 22 N. Y. 402; *Brown* v. *Cattaraugus County National Ins. Co.*, 18 id. 385.

On the contrary, in the case of *Jennings* v. *The Chenango County Mutual Ins. Co.* (2 Denio, 75), where the conditions made part of the policy declare that all applications for insurance must be in writing, and must state the relative situation of the property as to other buildings and the distance from each, if less than ten rods, and the printed application was so filled up as not to show the distance of other buildings from the insured property, though there was one within ten rods, — *held*, that the insured could not show by parol that the agent knew of this building at the time of making the application, and that plaintiff could not recover.

This case is affirmed in *Chase* v. *Hamilton Ins. Co.*, 20 N. Y. 52; also, *Brown* v. *The Cattarugus Mut. Ins. Co.*, 18 id. 387, and the case of *Plumb* v. *The Cattaraugus Mut. Ins. Co.*, id. 392, distinguished.

The cases of *Boehen* v. *Williamsburg Insurance Company*, 35 id. 131; *Rowley* v. *Empire Insurance Company*, 36 id. 550; and *Pindar* v. *Kings County Insurance Company*, id. 648; *Insurance Company* v. *Johnston*, 23 Penn. 72; *Sanford* v. *Ins. Co.*, 12 Cush. 541, are not in conflict with the foregoing cases.

VIII. The doctrine is established by an unbroken series of decisions, that, after a policy has once been forfeited, no waiver or estoppel can be set up successfully against the company by parol, unless made by the company or by an agent fully authorized, and upon a new and valuable consideration. 1 Phillips on Ins. § 10, p. 8 (5th ed.); also, §§ 904, 1040, and authorities cited; also, 2 id. § 2155; *Cockerill* v. *Cincinnati Ins. Co.*, 16 Ohio, 149; *Frost*

v. *Saratoga Co. Mut. Ins. Co.*, 5 Denio, 154; *Gates* v. *Madison Co. Mut. Ins. Co.*, 2 N. Y. 43; *Smith* v. *The Saratoga Co. Mut. Ins. Co.*, 3 Hill, 508; *Neely* v. *Onondaga Co. Mut. Ins. Co.*, 7 id. 50; *Phœnix Ins. Co.* v. *Lawrence*, 4 Metc. 9; *Forbes* v. *Agawam Mut. Ins. Co.*, 9 Cush. 470; *Worcester Bank* v. *Hartford Ins. Co.*, 11 id. 265; *Lee* v. *Howard Ins. Co.*, 3 Gray, 583; *Barrett* v. *Un. Mut. Ins. Co.*, 7 Cush. 175; *Murphy* v. *People's Ins. Co.*, 7 Allen (Mass.) 239; *Evans* v. *Timountain Ins. Co.*, 9 id. 329; *Muvey* v. *Shammut Ins. Co.*, 4 id. 116; *Tebbetts* v. *Hamilton Ins. Co.*, 3 id. 569; *Hale* v. *Mechanics' Ins. Co.*, 6 Gray, 169; *Kimbal* v. *Howard Ins. Co.*, 8 id. 33; *Philbrook* v. *New England Ins. Co.*, 37 Maine, 137; *Gardiner* v. *Piscataquis Ins. Co.*, 38 id. 439; *Hazard* v. *Franklin Ins. Co.*, 7 R. I. 429; *Trask* v. *State Fire and Marine Ins. Co.*, 29 Penn. St. 198; *Ripley* v. *Etna Ins. Co.*, 30 N. Y. 136; *New England Fire & Marine Ins. Co.* v. *Scheulter*, 38 Ill. 166.

In *Wing* v. *Harvey* (27 Eng. Law. & Eq. 140), the company collected and received the annual premium due after a forfeiture, and with full knowledge of the forfeiture, and thereafter treated the policy as in full force, and the court held they were estopped to set up the forfeiture.

In *Keenan* v. *The Mo. State Mut. Ins. Co.* (12 Iowa, 126), the provisions of the policy declare, that the consequences for the appropriation of the property to uses hazardous or extra hazardous are, that the policy should cease to be of effect "so long as the same shall be so used"; and the court very properly distinguished that case from one where the policy is absolutely void.

*David* v. *Hartford Ins. Co.* (13 Iowa, 69) does not conflict with the doctrine which we claim.

*City of Davenport* v. *Peoria Ins. Co.* (17 Iowa, 276) simply holds, that a parol contract to insure, followed by

delivery of a policy, is good, and the policy relates back to the parol contract, so as to cover an intervening loss.

The case of *Hutchinson* v. *The Western Ins. Co.* (21 Mo. 97) fully sustains the doctrine we have enunciated.

IX. The court below charged the jury, that there was a waiver of the forfeiture in this case, if the agent of the defendant, with knowledge of the forfeiture, by his words, acts and declarations, led the plaintiff or his agent to believe, that the policy was still in force, and forfeiture not insisted upon by the company ; and such acts, words and declarations were inconsistent with the forfeiture, and were such as to justify such belief in the mind of a reasonable man.

We assert, with the greatest confidence, that the law on this subject, as laid down by the court, is erroneous. It is clearly not within any of the numerous authorities already cited.

If a belief is generated in the mind of the plaintiff that the policy is in force, it is sufficient, without his acting on this belief, without his changing his position, without his doing something on the strength of that belief; and, in short, although the policy was absolutely forfeited and void, this conversation between the respective agents, which led plaintiff's agent to believe that the policy was still in force, was sufficient as a waiver of the forfeiture, or as an estoppel on the defendant from setting it up. This doctrine is not sustained by a single authority.

In the case of *Cockerill* v. *Cincinnati Insurance Co.* (16 Ohio, 149), it is held, that there must not only be a new and additional consideration, but it must be in writing. *Baptist Church* v. *Brooklyn Insurance Co.*, 28 N. Y. 153.

In *Spitzer* v. *St. Marks Insurance Co.* (6 Duer, 6), the court say, that, " to revive a policy forfeited is the same as to make one, and it must be done in writing."

Nor is the doctrine laid down by the court in the case at bar within any of the well defined boundaries of estoppel.

Three things are essential to constitute an equitable estoppel : first, misrepresentation or willful silence by one having knowledge ; second, the actor, without the means of information, was, by the conduct of the other party, induced to do what he otherwise would not have done; and third, injury from permission to allege the truth ; and these three things must appear affirmatively. *Com. v. Mott*, 10 Barr. 531.

X. The doctrine of agency laid down by the court to the jury, and especially in the sixth instruction, is not the law.

If the party dealing with the agent knew that he exceeded his authority, the principal is not bound. 1 Parsons on Contracts, pp. 40, 41.

It is not within the powers of an agent to waive a forfeiture after the forfeiture. *Wall* v. *Home Ins. Co.*, 8 Bosw. 597; *Sands* v. *Hill*, 42 Barb. 657 ; *North Berwick Co.* v. *N. E. F. & M. Insurance Company*, 52 Me. In this case, the written permission to increase the risk, upon receipt of additional premium, by an agent authorized in express terms to vary or increase the risk by such written permission in his power of attorney, held good. We cite also *Forbes* v. *Agawam Mut. Ins. Co.*, 8 Cush. 470 ; *Worcester Bank* v. *Hartford Ins. Co.*, 11 id. 265 ; *Barrett* v. *Un. Mut. Ins. Co.*, 7 id. 175 ; 6 Gray, 169.

Where the manner of doing a particular act is prescribed, the usual powers are not given. *Sanford* v. *Handy*, 23 Wend. 260.

It is expressly agreed in the policy, that, unless the consent to the increase of the risk be in writing, it avoids the policy. This is an agreeement by the plaintiff in effect, that no other consent than in writing will be suffi-

cient. The plaintiff, holding this policy in his hand, knew that the agent Verder could not give any other than written consent. This is a limitation on the power of the agent, brought home to the plaintiff. He had agreed with the principal, that the agent could give no assent which would bind the principal otherwise than in writing.

Unless, therefore, the consent to such increase was indorsed in writing on the policy, there was no consent to such increase within the terms of the policy. Nothing short of a new contract of insurance or a new agreement, upon a sufficient consideration, to change or alter the old contract, will sustain plaintiff's case.

XI. It is admitted by plaintiff that he increased the risk by putting the building to a more hazardous use. A particular premium had been agreed upon as the measure of the existing hazards. To add new hazard without new premium was beyond the power of the agent, because it was in fact giving new insurance without consideration.

Whatever powers might be presumed in the agent, he was known to be an agent, for the purpose of making insurance for a consideration — the representative of the defendant to dispose of value for value. The assured had as much right to treat the mere gift of insurance by the agent, on an independent piece of property, as binding on his principal, as he had so to treat the pretended consent or agreement of the agent to carry, under the old policy, what he admits is much more hazardous, and entitled to a higher or additional premium.

Where there is no stipulation in the policy as to an increase of risk, such increase, by the act of insured, does not make the policy void as to the original hazards; but the policy in such case does not cover loss from the increased risk. *Howard* v. *Kentucky & Louisana Mutual Ins. Co.*, 13 B. Mon. 282; 2 Hall (N. Y.) 632; 6 Ad. & El. 75; 1 N. & P. 279.

The court prohibited defendant from showing that the loss in the case at bar arose from this very increased hazard. It cannot be urged, that the effect of the declarations of the agent was an admission or consent that the risk was not increased by this new use of the building, for it is admitted by the plaintiff that the risk was thereby increased. The fact of the increase is not therefore in issue by the pleadings. However competent the evidence of the parol declarations of the agent might be on the issue whether the risk or hazard was increased, such declarations are clearly incompetent to bind the principal, after the fact of the increase is established, to pay a loss occasioned by such increased hazard. It is established by the evidence that the agents have printed blank policies signed by the president and secretary forwarded to them to fill out, which they are to countersign; that the agents have no power to waive any of the printed conditions in the policies, and that it is not customary for the agents of any companies to waive such printed conditions or forfeitures under them.

It is further proved that the agents have no power to take hazards of the class of this one put into the fourth story of said building, nor to fix the premium therefor, but the same must be referred to the home office.

XII. In the sixth instruction to the jury, the court charge, that, "in the absence of special instructions to the agent of the company known to the party insured, the acts and declarations of the agent must be considered as the acts of the company," if these were "made in the discharge of his duty," — that is, any acts, all acts. We say, only such acts as are within the usual and customary scope of the business about which he is engaged. But the court made no such qualification, and the jury so understood it.

We further claim that there were special instructions to the defendant's agent, not only in the printed regula-

tions in evidence, but in the contract itself, and known to the plaintiff. The court entirely ignore this view of the law in this case in its instructions.

The continued use of the building for manufacturing of rustic window shades, even after the waiver of a forfeiture prior to such use, can only be consented to in one way by the agent. Hence there was no consent to such use of the building after the forfeiture, even admitting that such forfeiture for the prior use had been waived; and, such use being unauthorized by the company, the keeping of benzine on the premises, in however small quantities, or however necessary or customary in that business, was in violation of the provisions of the policy, and rendered it void.

*New York Equitable Insurance Co.* v. *Langdon* (6 Wend. 623), *O'Neil* v. *Buffalo Insurance Co.* (3 N. Y. 122), *Harper* v. *Albany Mutual Insurance Co.* (17 id. 194), *Citizens' Insurance Co.* v. *McLaughlin* (Pennsylvania case), (6 Am. Law Reg. [N. S.] 374), were all cases in which the general business was authorized *expressly by the policy*, to which the keeping of the prohibited articles was incidental.

The instruction of the court, therefore, upon this point, as well as the modification of the special interrogatories to the jury by the court, numbered two, three and four, were erroneous.

*Putnam & Rogers* for the appellee.

From a lengthy printed argument filed by counsel for the appellee, the following points are extracted:

I. The main point urged by defendant on the trial in various forms (as objections to evidence, requests for instructions and exceptions to charge), viz., that a breach of the condition in the policy, avoiding it if the risk be

increased without the written consent of the insurers, is incapable of being waived by parol, is wholly untenable, because,

1. Although the condition, by its terms, provides that the policy shall be "void" on a breach thereof, its legal effect is simply to render it *voidable* at the election of the insurers. If they do not elect to avoid it, neither the insured nor third parties could treat it as void, and the insurers could waive the forfeiture and continue the policy in force. This is a rule well settled in respect, to written contracts generally, and especially as to policies of insurance. *David* v. *Hartford Ins. Co.*, 13 Iowa, 69; *Bigler* v. *N. Y. Central Ins. Co.*, 22 N. Y. 402; *Atlantic Ins. Co.* v. *Goodall*, 35 N. H. 328; *Carpenter* v. *Prov. Wash. Ins. Co.*, 16 Pet. 495; *Clark* v. *Jones*, 1 Denio, 516; *Keenan* v. *Ins. Co.*, 12 Iowa, 126; *Frost* v. *Saratoga Ins. Co.*, 5 Denio, 154; 1 Smith Lead. Cases (notes to *Dumpor's case*); *Cartwright* v. *Gardner*, 5 Cush. 273, 281.

2. Although the condition requires the written consent of the insurers to an increase of risk, in order to prevent a breach, the condition itself, or a breach of it, may be waived by parol. *Liddle* v. *Market Fire Ins. Co.*, 4 Bosw. 179; *S. C.*, 29 N. Y. 184; *Sheldon* v. *Atlantic Ins. Co.*, 26 id. 460; *Ames* v. *N. Y. Union Ins. Co.*, 14 id. 253; *Boehen* v. *Ins. Co.*, 35 id. 131; *Goit* v. *Nat. Prot. Ins. Co.*, 25 Barb. 189; *N. Y. Central Ins. Co.* v. *Nat. Prot. Ins. Co.*, 20 id. 468; *Peoria Ins. Co.* v. *Hall*, 12 Mich. 202; *S. C.*, Bonney on Insurance, 225, 235; *Warner* v. *Peoria Ins. Co.*, 14 Wis. 318, 323; *Wing* v. *Harvey*, 27 Eng. Law & Eq. 140; *North Berwick Co.* v. *Ins. Co.*, 52 Me. 336; *S. C.*, 6 Am. Law Reg. (N. S.) 187; *Smith* v. *Gugerty*, 4 Barb. Sup. Ct. 614; *Rathbone* v. *City & C. Ins. Co.*, 31 Conn. 193; 24 U. S. Dig. p. 365, § 148; *N. E. Fire & Marine Ins. Co.* v. *Shettler*, 38 Ill. 166;

*Bevin* v. *Ins. Co.*, 23 Conn. 244; *Viele* v. *Ins. Co.*, 19 Barb. 440; *Ins. Co.* v. *Stockbower*, 26 Penn. St. 199; *Keenan* v. *Dubuque Ins. Co.*, 13 Iowa, 375; *Buckbee* v. *Life Ins. Co.*, 18 Barb. 541; *Ruse* v. *Life Ins. Co.*, 26 id. 556; *Beal* v. *Park Ins. Co.*, 16 Wis. 241; *Ins. Co.* v. *Rogers*, 12 id. 337; *Hough* v. *City Fire Ins. Co.*, 29 Conn. 10.

3. The appellant's position (viz., that the provision in the policy requiring a *written* consent, excludes evidence of a *parol* waiver) confounds *fulfillment* of the condition with waiver of a breach of it. A written consent to increase of risk is not a *waiver*, but a strict *fulfillment* of the condition.

Unless there be an increase of risk without written consent, there is no breach, and no occasion for any waiver; nothing in fact to be waived. If a condition absolutely prohibiting any increase of risk, saying nothing about written consent, could be waived by parol, so could the one now in question, the absence of written consent being simply a constituent element in the breach, and having nothing to do with the mode of waiver. Neither this nor any other written contract provides for the manner in which a breach of it may be waived. No breach is contemplated, under any circumstances, by the terms of the contract.

II. The instruction, that the acts of defendant's agent were binding on his principal, in the absence of limitations on his authority, known to the insured, was correct, because,

1. The agent in question was shown to have full powers to effect insurances, issue policies (being intrusted with blank ones already signed, to be filled up and issued by himself), fix rates of premium, give the consent of the insurers to increase of risk, change of occupation, or any thing else which required such consent, and to cancel

policies, on behalf of the insurers, in his discretion, for increase of risk or other cause.

The evidence to this effect was wholly uncontradicted, and though the agent was the principal witness for the defendant, there was no attempt to prove, either by him or otherwise, any limitation whatever of his authority, even between himself and his principal. He was the general agent of defendant, with full power to transact all their business growing out of insurances at the place of his agency. And any limitations of his authority must have been known to the insured in order to affect them. See on this point, *Warner* v. *Peoria Insurance Co.*, 14 Wis. 318, 323; *North Berwick Co.* v. *Insurance Co.*, 52 Me. 336; *Post* v. *Ætna Insurance Co.*, 43 Barb. 351; *Sheldon* v. *Atlantic Ins. Co.*, 26 N. Y. 460, 465. See cases cited *supra*, under subdivision 2 of point I (most of which were cases of waiver by agent), and also *City of Davenport* v. *Peoria Insurance Co.*, 17 Iowa, 276.; *Keenan* v. *Insurance Co.*, 12 id. 126; *Insurance Co.* v. *Johnson*, 23 Penn. St. 72.

2. Notice to the agent of the facts constituting a breach, was notice to the insurers. *Keenan* v. *Insurance Co.*, 12 Iowa, 126; *McEwen* v. *Montgomery County Insurance Co.*, 5 Hill, 101; *Peoria Insurance Co.* v. *Hall*, 12 Mich. 202.

3. Insurance agency, as now carried on in this country, constitutes a distinct branch or department of business (like that of auctioneers, factors and others), and persons carrying it on will, as to third persons dealing with them *bona fide*, be clothed with all the powers usually exercised in it. The nature of the business and mode in which it is carried on, and the powers usually exercised in it, were proved by uncontradicted evidence on the trial, and should be taken notice of by the court without proof. It was shown that agents exercise a supervision over the

insured property during the term of insurance, as to its occupation, changes of risk, etc., and give instructions to the insured in respect to these matters, and that the foreign insurance companies so extensively carrying on business in this State, and deriving such immense revenues therefrom, deal with the insured parties through the local agents alone. There was no attempt to controvert this evidence. The power to waive objections to a particular occupation, involving an increase of risk, is necessarily involved in and incident to the exercise of the above powers. 1 Am. Lead. Cas. (3d ed.) 552; *Sanford* v. *Handy*, 23 Wend. 260, 266, opinion of NELSON, Ch. J.; Story on Agency, §§ 77, 106; *Conover* v. *Mutual Ins. Co.*, 1 N. Y. 290.

4. The power to cancel at discretion, for increase of risk, confided to the agent, involves the power to determine whether or not there be an increase, and to decide to continue the policy; and, if the agent, in the exercise of such power, examines the insured premises to see. whether or not the risk has been increased, and then gives the insured to understand that it has not been, or (what amounts to the same thing) that the policy will be continued in force, this will, as matter of law, operate as a waiver of any actual increase of risk arising out of facts ascertained in such examination, and estop the insurers from setting up the same as a cause of forfeiture.

5. The power to give the written consent of the insurers to a change of occupation, involving a change in the risk, in the agent's discretion, involves the power to determine whether such consent is necessary, *i. e.* whether the change will increase the risk, and any recognition of the policy as subsisting, by the agent, after examination of the premises and full knowledge of the change of occupation, and its effect on the risk, relied on by the insured, amounts to a declaration that written consent is unneces-

sary, and estops the insurers from afterward setting up its absence as cause of forfeiture.

6. Public policy and a due regard to the safety of our citizens require that, in respect to foreign insurance companies doing business in this State through local agents, a different rule should be established as respects the powers of the agent, from the one ordinarily prevailing between principal and agent. It is well known that the agent is the only party whom the insured deal with or knows in the transaction; confidence is reposed in him, and his instructions, especially in the matter of change of occupation or increase of risk, which is a matter of science and skill, and governed by special rules, known only to the initiated. The companies, as matter of fact, expect their agents to look after their interests and exercise a supervision over the property during the term of insurance. It is a matter of general usage, and no insured party ever dreams of asking to see the agent's commission or power of attorney, in order to ascertain whether he can safely deal with him. The contract is one "*uberrimæ fidei*," especially on the side of the insured; and it is just to require that these companies, which, deriving their corporate existence from the legislation of a remote State, are enabled to assume a national character, and swell their coffers with immense revenues derived wholly from business done through their army of local agents, should take the burden along with the benefit, and be bound by the acts of their local agents, in respect to insurances effected through them respectively, in all respects as if done by the home corporation (which, indeed, can act only through an agent of some kind) itself. To this ground the decisions have been rapidly tending; and this is a fit occasion for this court to take the lead in the distinct enunciation of the principle. See *Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550; *Warner* v. *Peoria Ins. Co.*, 14 Wis. 323; *N. E.*

*Fire & Mar. Ins. Co.* v. *Schettler*, 38 Ill. 166; *Keenan* v. *Mo. State Mut. Ins. Co.*, 12 Iowa, 126; and other cases cited under point I, subdivision 2, and *Conover* v. *Mut. Ins. Co.*, 1 N. Y. 290.

III. The verdict was right, on another ground of law, and facts not capable of being disputed. By the just and fair construction of the policy, the condition avoiding it on increase of risk without written consent, was intended to protect the insurers in cases where such increased risk was unknown to them until after a loss; while the clause giving them the right to cancel in case of increase of risk, protects them when they become aware of it before a loss. Hence, when the insurers are fully apprised of all the facts creating an increase of risk, especially when they examine the premises to ascertain if the risk has been increased, and fail to cancel, they cannot claim a forfeiture by reason of such increase. The election not to cancel, amounts to an election to continue in force, and is, as matter of law, a waiver of any breach of the other condition growing out of such increase.

The fact of knowledge by the company is expressly found by the jury, and there is no pretense of any attempt to cancel. Hence, the verdict is necessarily right.

IV. The evidence of the agent. Verder's directions to Skeel (one of the window shade manufacturers), as to the precautions he should take to avoid danger of fire, was properly received, and rests on the same ground precisely as Verder's similar directions, given to Camp (the other manufacturer), and the employees on the insured premises. It was not evidence of mere conversations or statements of facts made by the agent to third persons. It was an act done by the agent, as agent, in the discharge of his duties to the insurers. Skeel was the plaintiff's tenant of the insured premises, the character of whose occupation is claimed to constitute a breach of the policy.

As such, he was in privity with the plaintiff. The conversations with him, also, occurred immediately after, and are part of the same course of conduct, or *res gestæ*, with the acts and declarations of Verder on the insured premises, already alluded to, and in his interview with Newcomb, plaintiff's agent, and are explanatory and confirmatory thereof, and of the construction claimed for them by the plaintiff. Even if not themselves acts of waiver, they are acts from which a waiver could be inferred. Waiver, like other matters resting in parol, may be proved by indirect and circumstantial, as well as by positive, evidence. Indeed, it is not so much a distinct act, as the legal result or effect of other acts.

V. There was no breach of the condition as to keeping benzine on the insured premises, for the following reasons:

1. The language of the condition is to be construed strictly against the insurers, for the double reason, that such construction is always put on a condition creating a forfeiture, and that the forms of policies are prepared exclusively by the insurers, with great care, and with sole reference to their own views and interests, and hence are to be taken most strongly against them. *Carter* v. *Humboldt Fire Ins. Co.*, 17 Iowa, 456; *Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 405; *North Berwick Co.* v. *Ins. Co.*, 52 Me.; *S. C.*, 6 Am. Law Reg. N. S. 187; *Merrick* v. *Germaina Fire Ins. Co.*, 54 Penn. St. 277; 7 Am. Law Reg. N. S. 314.

2. The language of the condition is, " if the assured shall keep upon the said premises gunpowder or phosphorus, or petroleum, or rock or earth oils, or benzole, benzine or naptha, or any explosive substances, or shall keep or use upon the said premises camphene, spirit-gas, or chemical oils, without written permission in this policy, then and in every such case this policy shall be void."

A keeping by tenants of the assured, is not a keeping by the assured. If the insurers had intended to prohibit a keeping by any body of the articles in question on the premises, they would have said so. The "assured" was a non-resident of the State, as the policy on its face shows, and the insured premises were intended and always used for renting out to miscellaneous tenants. An owner of real estate cannot control the conduct of his tenants, and is not identified with them in law, unless by his own express agreement. *Sanford* v. *Ins. Co.*, 12 Cush. 541 ; *Paddleford* v. *Ins. Co.*, 3 R. I. 102 ; *White* v. *Ins. Co.*, 8 Gray, 566.

3. The "keeping" only of certain inflammable articles, including benzine, is prohibited, while in the same sentence the "keeping or using" of certain others is prohibited. This shows that the using of the first class was not intended to be forbidden. Hence the term "keeping" means something more than the presence of the article, for any purpose or in any quantity on the premises. It does not apply to a keeping in small quantities for daily use in a manufacture carried on in the building. Yet this was all that was done, as the jury have expressly found. See the following cases: *Ins. Co.* v. *McLaughlin*, 6 Am. Law Reg. N. S. 374 ; *Ins. Co.* v. *Langdon*, 6 Wend. 623 ; *O'Neil* v. *Ins. Co.*, 3 N. Y. 122 ; *Hynds* v. *Ins. Co.*, 11 id. 554.

VI. The keeping of benzine was not a separate and distinct thing from the window-shade factory, but part and parcel thereof, and the very thing, most of all, claimed to render said factory an increase of the risk. Hence a waiver of objection to the factory necessarily involved a waiver of objection to the benzine, and *vice versa ;* and the court's charge to that effect was correct. *Citizens' Insurance Co.* v. *McLaughlin*, 6 Am. Law Reg. N. S. 374 ; *Pindar* v. *Kings Co. Ins. Co.*, 36 N. Y. 648 ;

*Harper* v. *Albany Mut. Ins. Co.,* 17 id. 194; *Same* v. *N. Y. Ins. Co.,* 22 id. 441.

VII. The jury have expressly found, that the defendant's agent gave directions as to the manner in which the benzine should be kept, which were complied with, which, as matter of law, was a waiver of any breach, by reason either of the occupation as a window-shade factory, or the use of benzine.

VIII. There was no error in the refusal to submit to the jury certain of the special issues requested by defendant, nor in the submission of the one asked by plaintiff, and those submitted by the court on its own motion. It is not the right of a party to have any and all questions which he chooses to frame, submitted. It is in the discretion of the court to submit such as it deems proper, which discretion will not be reviewed except in a clear case of abuse. The questions rejected were wholly immaterial. *Hatfield* v. *Lockwood,* 18 Iowa, 296; *Patridge* v. *Gilbert,* 3 Duer, 184.

BECK, J.—This cause has been conducted by the respective counsel of the parties with ability, learning and zeal fully commensurate with its importance. The record attests the skill displayed by the counsel at the trial in the District Court. In addition to complete and exhaustive printed arguments submitted in this court in behalf of each party, which exhibit great learning and industry in their preparation, we have had the benefit of a most thorough and profound oral discussion of the questions involved by Mr. Lane, for the defendant, and Mr. Rogers, for the plaintiff. These arguments cannot be too highly commended for the evidence they exhibit of patient industry in the collection of authorities and thoughtful consideration of the questions which arise in the case. The industry and ability of

1. PLEADING AND PRACTICE: confession and avoidance.

counsel in the argument have greatly abbreviated our labors in the investigation of these questions, and we enter upon their discussion with a satisfactory feeling of preparation, for which we are free to acknowledge our obligation to the attorneys who have argued the cause.

I. The assignment of errors first presented in argument for our consideration relates to the action of the court in reference to the admission of plaintiff, to the effect, that the terms of the policy had been violated, as averred in the answer of defendant. The defendant in separate motions moved to strike the paper from the files, to strike out the notice, therein contained, that evidence in avoidance of the admitted defenses would be relied on, for judgment upon the pleadings, and finally for permission to open and close the cause upon the trial. These motions were severally overruled.

The answer of defendant admitted the execution of the policy and the loss as alleged in the petition, but set up certain acts of plaintiff in violation of the terms of the policy whereby it became forfeited. Under our system of pleading, no replication is required to an answer of this character, and the cause is at issue thereon, the law presuming a full denial thereof, and all matter properly in avoidance, as the replication of plaintiff. The answer may be controverted at the trial by evidence in denial of the facts averred or by new matter in avoidance, as if fully pleaded under the old system. The Revision (§ 2917) provides, that a party may admit in writing any allegation of facts pleaded by his adversary which otherwise would be deemed controverted by mere force of law. This admission, of course, dispenses with proof of all facts thus admitted. But it does not preclude the party making it from proving other independent facts in avoidance of those admitted.

Upon the defendant filing such admission, his answer

sets up the facts relied upon as matter in avoidance; but when filed by the plaintiff, the replication being dispensed with, there is no pleading prescribed by the Revision in which such matter may be embodied. Upon an admission by the plaintiff, it is evidently proper that he should in some way advise the court that matter in avoidance of the facts admitted is relied upon to defeat their effect, for, without being so advised, the court, upon the pleadings, would be justified in rendering judgment for defendant. This may be done by a separate paper, by an entry of record, or, as in the case at bar, which seems to be the better practice, by embodying the notice in the admission itself. This practice, we think, is contemplated by section 2917, above cited. If, upon filing an admission, the plaintiff would be precluded from setting up matter in avoidance, it would practically defeat the intention of the section, and render it impossible for such admissions to be made when facts in avoidance are relied on. But the law expressly provides that the admission may be by the plaintiff as well as the defendant. When made by the plaintiff, it may be without the abandonment of his right to defeat the effect of the facts admitted, by evidence of other independent facts. How can this be done? The obvious solution of the difficulty is a statement or notice of intention to prove matter in avoidance. Such a statement or notice is not expressly provided for by the Revision, but, from the nature of the case, is necessary, and is in harmony with our system of pleading, and, therefore, proper. It matters not whether it be classed as a pleading or not, nor what name be given it, though it may be properly designated an admission and avoidance, in imitation of the name of pleas and replications of like character under the common law pleading.

As no replication to the answer is necessary, the matter of avoidance relied upon need not be specifically set out

with, or as a part of, the admission. Without the admission, the defendant would not be informed specifically what facts in avoidance of his defense would be given in evidence. It is certainly imposing no hardship upon him, nor could it be a surprise, for the plaintiff to admit the facts he pleads, without stating the matters in avoidance to be given in evidence. Having been relieved of the necessity of proving his defense, he cannot, on that ground, base a claim to be informed fully of the evidence relied on by plaintiff.

The terms of the admission and avoidance made it applicable to the term of court at which the case was tried. Whatever effect the condition limiting the operation of the paper would have had at another term of court, it did not operate to destroy its effect at the trial. It could have been withdrawn only with leave of the court, and was effective for the purposes of an admission until its withdrawal, which would not have been allowed without proper showing. At all events, if the condition is improper as a part of the paper, the limitation thereby attempted could not have been enforced. But the defendant was not prejudiced thereby, and we cannot be expected to adjudicate upon possible errors and prejudice that might have resulted therefrom.

It is urged, that the admission does not go to all the defenses pleaded by the defendant; but this objection, if tenable, was not made in the court below, and cannot be first urged here. All of plaintiff's motions, directed against the admission and avoidance, as well as his motion for judgment thereon, were properly overruled.

The answer of defendant, admitting the loss and setting up matter in avoidance of plaintiff's right to recover,
2. —— trial: imposed upon defendant the burden of proof,
who has affir- with the consequent right of opening and
mative of the
issue. closing at the trial.

Upòn the admission and avoidance being filed by plaintiff, the court ruled, that he had the burden of proof, and permitted his attorneys to open and close against the objection of defendant. The ruling of the court upon this question was purely a matter of practice, which we will not review, unless there is evidence of an abuse of discretion, which in no manner appears. *Smith, Twogood & Co.* v. *Coopers & Clark*, 9 Iowa, 379; *Woodward* v. *Laverty*, 14 id. 383. Under the state of the pleadings and admissions, without the introduction of evidence by either party, plaintiff would have failed in the action; the burden of proof was therefore upon him, and he had the right to open and close the trial. *Vieths* v. *Hagge*, 8 Iowa, 192.

II. The question next presented and discussed in the argument of defendant's counsel relates to the order of 3. —— consolidation of the court consolidating this with other causes causes. pending upon the same policy against other defendants, or, more properly, requiring each of those causes to abide the event of this, and providing for the like judgments to be entered therein as in this. Inasmuch as the other causes are not on appeal in this court, and in order to waive any objection that might arise therefrom to the consideration of the question, the parties have stipulated in writing, that the orders made in all the causes may be reviewed in this court upon the record before us. Under this stipulation, the objection made by defendant to the said orders of consolidation, as they are termed in the assignment of errors and arguments, may be properly considered.

Section 2764 of the Revision provides, that, "when two or more persons are bound by contract, or by judgment, decree or statute, whether jointly only, or jointly and severally, or severally only, and including the parties to negotiable paper, common orders and checks, and sureties

on the same or separate instruments, the action thereon may, at the plaintiff's option, be brought against any or all of them." Under this section, in my opinion, the defendants in the several actions could have been sued jointly. Though, by the terms of the policy, each company is severally liable thereon, yet the same evidence which would charge liability upon one, would fix it upon all the others. We cannot conceive of any state of facts which, under the terms of the policy, would render one, and not all, liable. The several companies united in one agency to do business. Risks were jointly taken, and losses jointly adjusted and paid through this agency. Their manner of business was as though they were one company. The condition of the policy, whereby their liability becomes several, is defeated, so far as it tends to prevent a joint action thereon, by the section of the Revision above cited. The companies defended the suits through the joint agency, and all of them were engaged in the defense of each suit,—each one thus became a party to each suit. 1 Greenl. Ev. § 522–3. A judgment in one suit would be conclusive against all the companies. *Lovejoy* v. *Murry*, 3 Wallace, 18. The several suits are upon the same instrument, for the same cause of action, supported and defended by the same evidence, prosecuted by the same party plaintiff, against several parties that could have been joined as defendants, and that are, in fact, parties to each suit in contemplation of law, and each would, therefore, be concluded by a judgment recovered in any one of the actions. Under these circumstances, the order of consolidation was properly made.

The power of the court thus to consolidate the several actions, upon motion of plaintiff, is not expressly confered by the Revision. Section 2980 authorizes consolidation on motion of defendant. The same reason and necessity exists for allowing the relief, in a proper case,

to plaintiff, upon his motion. The power of courts to consolidate actions, has been long exercised in the absence of of any express statutory directions. *Clason* v. *Church*, 1 Johns. Cas. 29 ; *Hollingsworth* v. *Broderick*, 31 Eng. Com. Law, 162 ; *Lewis* v. *Barkes*, 93 id. 329.

These cases were upon polices of insurance on vessels or their cargoes, signed by many underwriters in the manner that prevailed in former times, before the business of insurance was done as at present by powerful companies and incorporations. The contracts of the underwriters in these cases, were not unlike the one which is the foundation of the action under consideration. Each underwriter was severally bound, by the policy he subscribed, to pay a stipulated sum in case of loss. In one of the cases eight, in another eighteen, and in the third forty, separate actions were consolidated. The orders, however, were made in each instance upon the motions of defendants. The reasons for consolidation upon motion of plaintiff are equally strong, and warrant the application of the rule, when invoked upon proper showing by either party.

The construction above given to section 2764 of the Revision, whereby an action would be sustained upon the policy against all of the underwriters jointly, is not concurred in by my brothers, who unite in holding that such an action could not be maintained. They consider the policy operates precisely as though there were four separate contracts, and that the several underwriters are separately bound thereon, and that it must be considered as the separate contract of each of the obligors, and not as one contract upon which all are severally bound. I am constrained to regard it, as it is in fact, as one contract, upon which the obligors are severally bound. The fact that each obligor is severally bound to pay a separate sum, to my mind, does not give a character to the instru-

Viele v. Germania Insurance Co.

ment, nor remedy thereon, different from such as would exist were the obligors severally bound to pay the same sum. The extent or amount of the liability of the obligors upon the instrument, does not, in my opinion, sustain the view that it is, in contemplation of law, four separate instruments. It is in fact one instrument, upon which the obligors are severally liable, and, in my opinion, comes within the purview of the section above referred to. I state these views with diffidence, and would not urge them were they not at the very foundation of my conclusion upon this point.

Mr. Justice COLE concurs in affirming the ruling of the court below requiring the other causes to abide the verdict and judgment rendered in this one, but arrives at that conclusion upon a different course of reasoning. He thinks, that, under the peculiar facts of the case, the identity of the contract, pleadings, defense, plaintiff, and that, as no cause was shown by the defendants, in answer to the rule, why the order should not have been made, its allowance was a matter within the discretion of the court, and that, as no abuse of that discretion appears from the record, and no prejudice appears to have resulted to the defendants, we should not interfere with the ruling. He is of opinion, however, that such practice should not be encouraged, as it might lead to abuses and work injustice. As no such results appear in this case, he is willing to sustain the order of the District Court.

The Chief Justice and Mr. Justice WRIGHT are able to concur in neither the views of Mr. Justice COLE, nor of those of the writer of this opinion, and unite in holding that the ruling of the District Court upon this point is erroneous. That ruling is, therefore, sustained by reason of a division in opinion of this court upon the question.

III. The solution of one question will dispose of many points made by defendant relating to the admission and

4. INSURANCE: exclusion of evidence, and the giving and waiver of conditions: refusing of instructions to the jury. The estoppel. question is this: Can the breach of the conditions of the policy against the increase of the risk, without the written consent of the insurers, whereby the instrument became forfeited, be waived by parol or by the acts of defendant?

The plaintiff admitted the increase of the risk by the use of a part of the building insured for the manufacture of rustic window shades, but sought to avoid the forfeiture, which otherwise would have resulted, by evidence tending to show the consent of the agent of defendant to such use, his acts and declarations recognizing the contract of insurance, after the increase of the risk, and his admission that the building continued to be covered by the policy. This evidence was given to the jury against the objection of defendant, and the court *held*, in the instructions to the jury, that such facts, if proved, would operate as a waiver of the forfeiture and entitle plaintiff to recover. The following are among the conditions of the policy:

"If the above mentioned premises shall be used or occupied so as to increase the risk, or become vacant and unoccupied, or the risk be increased by the erection of adjacent buildings, or by any other means whatever, within the control of the assured, without the assent of the companies indorsed hereon; * * * or if the assured shall keep upon the said premises gunpowder or phosphorus, or petroleum, or rock or earth oils, or benzole, benzine or naptha, or any explosive substance, or shall keep or use upon the said premises camphene, spirits, gas or chemical oils, without written permission on this policy, then, and in every such case, this policy shall be void."

The question above stated is fairly presented by the record, and is of very great importance, not only in its

relation to this case, but to the business of insurance generally. We have endeavored to give it the careful and patient consideration, aided by the able argument of the counsel for the respective parties, which its importance demands.

The policy which is the foundation of this action, though a unilateral contract in form, contains covenants of the assured as well as of the underwriters, and mutual agreements of the parties. Some of these covenants on the part of the assured, are in the nature of warranties, and conditions precedent; others are in the nature of obligations imposed by the conditions limiting or measuring the liability of the underwriters. The covenants of the insurers are mostly, if not all, dependent upon the obligations or covenants of the insured, expressed or implied in the policy. The policy, though subscribed only by the underwiters, is evidence of the contract entered into by both parties, and binds both. 2 Parsons' Maritime Law, 27; Parsons' Mercantile Law, 404. Contracts of this character, binding the obligor upon conditions to be performed by the obligee, but subscribed only by the obligor, are not uncommon. Those for the sale of real estate are often in this form. The language used to express the idea that the obligor is not bound to perform his covenant, until the conditions imposed upon the other party are performed, or, in other words, that the obligor's covenants are dependent, is usually a recital of the conditions which are to be performed by the obligee, following with the declaration that if they are not performed, the instrument shall become void, or forfeited. The policy under consideration is in this form. It declares, that if the risk is increased by means within the control of the assured, without the assent of the underwiters, it " shall be void." By the conditions expressed, the assured is prohibited from increasing the risk, and he obligates himself that it

shall not be increased in the manner prohibited. This is his undertaking, and, as we have seen, he is bound thereby as though he had subscribed the policy. This is obvious; but a word or two more may express the idea more clearly. The underwriters obligate themselves to pay a certain sum in case of the loss of the building by fire, with the condition, however, that the risk shall not be increased in the manner prohibited. To this condition the assured assents by the acceptance of the contract, and he thus obligates himself and becomes bound by the policy, that the risk shall not be increased. If he permits it to be increased, his covenants are broken. The condition which he is bound to perform is precedent to the underwriters' covenant. The underwriters are, therefore, not liable on the policy, which ceases to bind them, and to that extent the policy becomes void.

Unsound conclusions in the argument of defendant's counsel, result from an improper understanding of the expression "shall be void," used in the condition above quoted from the policy. It is insisted, that the instrument, by force of these words, upon the increase of the risk, became absolutely null and void. The phrases and words used to convey the idea are, "*ipso facto* void;" "dead;" "extinct;" "defunct;" "of no effect," etc., etc.; meaning thereby that the instrument has no force or effect, in the sense of these terms when applied to instruments void in law, as the deeds of parties having no legal capacity to contract, or contracts against public policy, etc. But the term "void," as used in the policy, has no such meaning. It simply means that the underwriters, upon the violation of his covenants by the assured, shall cease to be bound by their covenants in the policy; and this is in accordance with the true definition of the word, and its common use in like connections. The policy does not cease to have a legal existence, it is the only compe-

tent evidence of the contract it embodies, and in truth is
not void except so far that the underwriters are no longer
bound thereby. Neither will they be discharged there-
from unless they plead the fact that the insured failed to
perform his covenants contained in the policy. Their
silence would waive the default of the opposite party.

The position of defendant's counsel, which is supported
by several authorities, is to the effect that upon breach a of
the conditions of the policy by the assured, which would
defeat recovery thereon, it becomes absolutely void — as
it were, dead — and that nothing short of a new creation
could impart vitality to it. This doctrine is certainly
unsound when applied to other contracts; for, on the
contrary, after default in the conditions by one party,
the other may waive the forfeiture and treat the instru-
ment as of binding force upon himself. No reasons can
be given to except policies of insurance from the opera-
tion of this rule. The party in default cannot defeat the
contract; the party for whose benefit the conditions are
introduced may waive the forfeiture. It follows, there-
fore, that the instrument is forfeited at the option of the
innocent party; and if he waives the forfeiture, the con-
tract stands as if no breach had occurred. In *Williams*
v. *Bank of the United States*, 2 Peters, 102, the doctrine
is announced in these words: "If a party to a contract,
who is entitled to the benefit of a condition, upon the
performance of which his responsibility is to arise, dis-
penses with, or by any act of his own prevents, the per-
formance, the opposite party is excused from proving a
strict compliance with the condition."

We conclude, therefore, that the forfeiture of the policy
on account of the breaches of the conditions thereof, could
have been waived by the defendant, and if waived, the
policy continued of the same binding force which it orig-
inally possessed. This view is sustained by the following

authorities: *Keenan* v. *Mo. State Mut. Ins. Co.*, 12 Iowa, 126; *David* v. *The Hartford Ins. Co.*, 13 Iowa, 69; *Carpenter* v. *The Prov. Wash. Ins. Co.*, 16 Pet. 509; *Coursen* v. *Penn. Ins. Co.*, 46 Penn. St. 323; *Atlantic Ins. Co.* v. *Goodale*, 35 N. H. 328; *Frost* v. *Saratoga Ins. Co.*, 5 Den. 154; *Clark* v. *Jones*, 1 id. 516; *Cartwright* v. *Gardner*, 5 Cush. 281; *North Berwick Co.* v. *Ins. Co.*, 52 Maine, 336; *Warner* v. *Peoria Ins. Co.*, 14 Wis. 323; *Smith* v. *Gugerty*, 4 Barb. S. C. 614; *N. E. F. & M. Ins. Co.* v. *Schettler*, 38 Ill. 166; *Viall* v. *Ins. Co.*, 19 Barb. 440; *Ins. Co.* v. *Stockbower*, 26 Penn. St. 199; *Buckbee* v. *Life Ins. Co.*, 18 Barb. 541; *Beal* v. *Park Ins. Co.*, 16 Wis. 241; *Wing* v. *Harvey*, 27 Eng. Law & Eq. 140; *Peoria F. & M. Ins. Co.* v. *Hall*, 12 Mich. 202.

IV. We are next led to inquire as to the manner of the waiver of the forfeiture, whether it must be in writing or may be by parol, and what acts of the defendant will amount to a waiver.

*5. —— waiver need not be in writing.*

Parol evidence is not admissible to contradict or alter a written instrument, but this rule does not exclude such evidence when adduced to prove that a written contract is discharged, or that the damages for non-performance were waived, or that performance of a part of the contract was dispensed with. 1 Greenleaf's Ev. §§ 302–304; 2 Phil. Ev. (Cowen & Hill's and Edwards' Notes) 692 and note 505; 2 Starkie's Ev. 574; *Fleming* v. *Gilbert*, 3 Johns. 528; *Merrill* v. *Ithaca & Oswego R. R. Co.*, 16 Wend. 586.

These exceptions to the rule, or rather the rule admitting parol evidence for these purposes, may not apply to specialties; but a contract of insurance need not be by specialty, or even in writing. It seems to be the better opinion that it may be oral only. Parsons' Mercantile Law, 403 and notes; 2 Parsons' Maritime Law, 19 and notes; *City of Davenport* v. *Peoria Ins. Co.*, 17 Iowa,

276; *Commercial Ins. Co.* v. *Union Ins. Co.*, 19 How.
321; *Baptist Church* v. *Brooklyn Ins. Co.*, 19 N. Y. 305.
We need not, then, inquire whether a policy executed by
an incorporation and attested by its corporate seal is a
specialty, for the policy sued on is not sealed by the com-
panies, and is therefore a simple contract and not a
specialty. The rule therefore will not, in this suit ex-
clude parol evidence for the purposes above mentioned.
The cases which we will hereafter cite, in considering
what acts may amount to a waiver of conditions or for-
feiture on account of breaches of conditions, support this
doctrine and will illustrate its application.

It is argued that the condition in the policy, to the
effect that an increase in the risk avoids the contract on
the part of the underwriters, unless consent thereto be had
in writing, implies that such consent can be given in no
other way. It will be at once remarked, that this restric-
tion is itself a condition, and is just as capable of being
waived or dispensed with as any other condition of the
instrument and in the same way. There is nothing in
the terms of this condition prohibiting its waiver. But
the conditions of the policy became broken by an increase
of the risk, without written consent, and there at once
happened a forfeiture whereby defendant was discharged
from the contract. Now, as a matter of fact, the waiver
was not of the written consent, but of the forfeiture.

V. What will amount to or have the effect of a waiver
of a forfeiture of the policy, or a dispensation of the per-
formance of its conditions? The party for
whose benefit a condition is introduced in a
contract may determine whether it shall or shall not be
enforced, and, as we have seen, may waive or dispense
with its performance. It seems reasonable that the same
character of evidence will establish a waiver or dispensa-
tion of conditions, that is sufficient to prove the existence

of a contract. An express agreement to that effect will of course be sufficient. Circumstances proving that the party treated the contract as subsisting and not forfeited, a course of dealing consistent only with that hypothesis, and acts and declarations whereby the other party was induced to believe that the condition was dispensed with or forfeiture waived, will be sufficient to preclude the setting up of the breaches of the condition as a defense to the contract of the party bound thereby. Thus |the receipt of premium upon a policy after forfeiture is a waiver thereof. *North Berwick Co.* v. *Insurance Co.*, 52 Maine, 336; *New York Insurance Co.* v. *National Prot. Ins. Co.*, 20 Barb. 468; *Liddle* v. *Market Fire Insurance Co.*, 29 N. Y. 184; *Ames* v. *New York Union Ins. Co.*, 26 id. 263; *Bochen* v. *Williamsburgh Ins. Co.*, 35 id. 131; *Goit* v. *National Prot. Ins. Co.*, 25 Barb. 189; *Viall* v. *Genesee Mutual Ins. Co.*, 19 id. 446; *Frost* v. *Saratoga Mutual Ins. Co.*, 5 Den. 154; *Lycoming Ins Co.* v. *Stockbower*, 26 Penn. St. 199; *Wing* v. *Harvey*, 27 Eng. Law & Eq. 140.

So the taking of an additional risk on the same policy will waive a forfeiture, existing at the time, for breach of condition. *Rathborn* v. *City Ins. Co.*, 31 Conn. 193.

The knowledge of the officers of an insurance company taking a risk upon the life of a party, that he intended to go south of a certain degree of latitude, is a dispensation of a condition that the insured should not go beyond that latitude. *Bevin* v. *Connecticut Life Ins. Co.*, 23 Conn. 244. ; The renewal of a life policy which had expired by non-payment of premium, in favor of one who at the time was sick, and so known to the officer renewing the policy, is a waiver of conditions against ill health of the assured, which otherwise would have avoided the policy. *Buckbee* v. *United States Ins. & Trust Co.*, 18 Barb. 541. The following cases which illustrate the

doctrine under discussion, we have not space to classify or further notice in this connection. *Peoria Ins. Co.* v. *Hall*, 12 Mich. 202; *Sheldon* v. *Atlantic Ins. Co.*, 26 N. Y. 460; *Warner* v. *Peoria Ins. Co.*, 14 Wis. 318; *N. E. F. & M. Ins. Co.* v. *Schettler*, 38 Ill. 166; *Coursen* v. *Penn. Ins. Co.*, 46 Penn. St. 323; *Ruse* v. *Mutual Ben. Life Ins Co.*, 26 Barb. 556.

It will be observed that the waiver of the condition or forfeiture, under these authorities, is not required to be supported by a consideration. In the cases where it is held that the payment of premium upon a policy forfeited for breaches of condition, is a waiver of forfeiture, the payment was not made in consideration of the waiver, but for the renewal or continuance of the insurance. The waiver or dispensation is not in the nature of a contract which requires the support of a consideration, but rather of an estoppel, whereby the underwriter is precluded from denying the validity of the contract, on account of acts or admissions either recognizing it as of binding force after the forfeiture, or holding out to the assured that the performance of the condition is dispensed with.

*7. —— need not be founded on new consideration.*

It is not an accurate use of terms to say that the condition of a contract must be supported by a consideration. The contract itself must be, but the condition is a mere incident thereto, and its sufficiency, validity or force is in no way affected or dependent upon the consideration. It is true the condition may influence the parties in fixing the amount of the consideration, but the law will not, in the absence of fraud, inquire into its sufficiency, nor hold a contract invalid because a full or just value has not been received by the obligor. The case of a policy of insurance illustrates the point. The underwriter is bound thereby to pay the assured the amount of any loss by fire which may happen to his property within a certain time.

The consideration of this contract is the premium received by the underwriter. The assured is bound not to permit the risk to be increased; this obligation is the condition of the policy, and with it we can associate no idea of consideration. It may enter into the contemplation of the underwriter when fixing the value of the risk, which may be worth a greater premium without the condition in the policy, but the adequacy of the consideration, as we have remarked, is not a matter of inquiry, and the consideration itself no element of the condition. We conclude, therefore, that, as the condition is not dependent upon nor supported by the consideration, it may be waived or dispensed with even by an agreement without consideration.

VI. We approach the consideration of the questions involving the power of the agent of the defendant to dispense with the conditions of the policy or to waive the forfeiture resulting from the breach thereof. Defendant's counsel contend, that, as shown by the policy, the agent possessed no power to assent to an increase of risk except in writing, and that, in order to bind the company by his acts, declarations or agreement, dispensing with the conditions or waiving the forfeiture, his authority so to do must be expressly proved.

There was evidence tending to prove that the agent had full power to effect contracts of insurance, to fix rates of premium, to give consent to the increase of risk and change of occupation of buildings insured, to cancel policies in his discretion, and that in the prosecution of their business it was the custom of agents of insurance companies to exercise supervision over property covered by policies issued at their respective agencies during the term of insurance.

The instructions to the jury, and the rulings upon objections to evidence, in effect, hold, that the authority of

the agent to waive forfeitures and dispense with conditions may be sufficiently shown by proof of the possession and exercise of the powers above stated, and that express authority need not be shown in order to bind the defendant thereby. This we conceive to be the law.

By proof of the possession of the powers aforesaid, the authority of the agent is shown to be in fact of the broadest and most plenary character. It is difficult to conceive of an act in the prosecution of the business of insurance, which the officers of the companies can do, that cannot be done by the agent. He is provided with blank policies whereby he is enabled to enter into the contract of insurance. These blank instruments are in no sense contracts until signed by him, for it is expressly provided therein that they " shall not be valid unless countersigned by the duly authorized agent of said companies at Davenport, Iowa."

Such is the express provision of the policy upon which this suit is brought, and there is not one word of limitation upon the authority of the agent contained in it. No attempt was made to prove knowledge on the part of the assured of any limitation of the power of the agent, further than by the policy itself, and a general custom or rule of insurance companies and agents that no change can be made by agents in the printed conditions of the policy. The effect of such limitation will be hereafter noticed. The powers of the agent, then, are those of a general agent, and the companies are bound by his acts which are within the scope of the general authority he possesses, even though he violates limitations upon that authority which are not brought home to the knowledge of the party with whom he deals. Story on Agency, §§ 126, 134; *Keenan* v. *Mo. State Mut. Ins. Co.*, 12 Iowa, 131; *City of Davenport* v. *Peoria Ins. Co.*, 17 id. 276; *Warner* v. *Peoria Ins. Co.*, 14 Wis. 318, 323; *North*

*Berwick Co.* v. *N. E. F. & M. Ins. Co.*, 52 Maine, 336 ; *Post* v. *Ætna Ins. Co.*, 43 Barb. 351 ; *Sheldon* v. *Atlantic Ins. Co.*, 26 N. Y. 460.

VII. This brings us to inquire what powers may be exercised by the agent within the scope of his general authority. Under this general authority he has power to conduct the business of insurance of his principals at the city of Davenport. This is the aggregation of all his powers, and he possesses implied authority to do all things proper and necessary in the prosecution of that business, subject of course to limitations imposed by his principals and known to those with whom he deals. These incidental powers may be numerous, and their enumeration is not necessary. Among others he has the power to assent to the increase of the risk, and to a change of occupancy of property insured, and to cancel policies on account of increase of risks or for any other reason. In the exercise of these powers he is guided by his own discretion, which it is presumed will be exercised for the best interests of his principals. He has, also, all the powers which by the usages of the business are properly and ordinarily exercised by agents engaged therein. Story on Agency, §§ 77, 106.

*9. —— implied and incidental powers.*

It appears that insurance agents usually exercise supervision over the property insured by them, and this necessarily results from the character of the business and their authority to cancel policies on account of increase of risk. The agent is charged, by the terms of the policy on which this suit is based, with the power to determine whether the risk is increased. If he so determines, he may cancel the policy and put an end to the contract. This involves the necessity of examination of the condition of the insured property during the life of the policy, and constant watchfulness to protect the interest of the underwriters. If he determines that the risk is increased, such determination

Viele v. Germania Insurance Co.

is final, for it seems the assured has no appeal therefrom and no redress for loss that may be sustained thereby. Such being the great, and in some respects extraordinary, powers of the agent, it follows that he is clothed with the power to dispense with conditions and waive the effects of breaches thereof, in contracts of insurance made by him. These powers are necessary incidents of his general authority, and without their exercise he could not act to its full extent. If he, can determine that the conditions of the contract have been broken, surely he can also determine that they have not been broken. If he can put an end to the contract because of the increase of the risk, and the consequent forfeiture, certainly he can waive that forfeiture. If, possessing such full authority to make the contract, determine that it is performed, and to put an end to it, he can not dispense with its conditions after it is executed, the rules of law controlling agents generally and all kinds of contracts, must be held not applicable to insurance policies and insurance agents., These companies have no way of dealing with their customers and the public, except through their agents. They are incorporations existing under the laws of another State. Practically those powers can only be exercised by agents. They are inherent in the corporations, whose interest as well as fair dealing toward others (as it did in the case before us), may require their exercise. The agents, therefore, must be held to have full authority to dispense with the conditions of policies, after their execution, and to waive forfeitures for breaches thereof.

As we have already intimated, the law, in its application to other kinds of contracts, and to agents transacting other kinds of business, fully sustains the doctrines we have announced. This may readily be illustrated by facts disclosed by the record. The owner of the property upon which the policy in question was issued was a non-

resident of the State, and the business was transacted for him by an agent, who, it seems, exercised general powers in all matters pertaining to the property. Now, suppose this agent had executed a contract for the rebuilding of the property burned, or his principal had executed it, and it was delivered by the agent, blanks being filled by him under proper authority, with the name of the other contracting party, sums to be paid, etc. This contract contained many conditions, as we may suppose, for the benefit of the property owner, and the agent was authorized to assent in writing to the dispensation of certain of them, and the power to put an end to the contract in case of the failure of the other party to comply with its conditions. During the progress of the work, questions arose whether certain things done or omitted to be done by the builder, were in violation of the conditions of the contract. The agent, as to whose power not one word of limitation existed in the contract, or was otherwise known to the builder, asserts that the matters in question are not in violation of the contract, and treats it as complied with, or verbally assents to the dispensation of certain conditions. When the building is completed, in accordance with the contract as thus modified, the principal refuses to pay the sum agreed on, because of non-compliance on the part of the builder with the conditions thus waived by the agent. Upon no recognized rules of law could this defense be sustained, and we would have no difficulty in finding ample authorities in support of the doctrine that the waiver of forfeitures by reason of the breaches of the conditions, and the dispensation of the conditions by the agent, were binding on the principal. This supposed case is not distinguishable upon principle from the case disclosed by the record.

The views above advanced are fully sustained by the more recent decisions of the courts. In the *Peoria Fire*

*and Marine Ins. Co.* v. *Hall* (12 Mich. 213) the knowledge of the agent when the policy was issued, that gun powder was kept on the premises insured, was held to be a waiver of a condition prohibiting the keeping of it without written permission. In *Warner* v. *The Peoria Fire and Marine Ins. Co.* (14 Wis. 319) the policy required notice to be given of additional insurance, and consent thereto indorsed on the policy. The agent indorsed a waiver of this condition as follows: " Other insurance permitted without notice until required." The court held this to be a sufficient waiver, and that the agent had authority to make it. In *N. E. Fire and Marine Ins. Co.* v. *Schettler* (38 Ill. 170) the agent, upon the receipt of additional premium, gave permission, indorsed on the policy, for the removal of the building and goods to another lot. In a suit upon the policy, the insurance company claimed, that the agent had no power to consent to the removal of the property. The court held, that the power will be presumed without proof.

The following additional authorities support the doctrine we have above announced: *Sanford* v. *Handy*, 23 Wend. 260; *Conover* v. *Mutual Ins. Co.*, 1 Comst. 290; *Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550; *Plumb* v. *Cattaraugus Ins. Co.*, 18 id. 392; *Sheldon* v. *Atlantic Fire and Mutual Ins. Co.*, 26 id. 465.

The cases cited in prior pages in support of the positions that there may be a waiver of a breach of the conditions of a policy, and that such waiver may be by parol or presumed from the acts of the parties, sustain the point here made; the waiver in those cases being generally, if not all, made by agents.

It is not to be disguised, that, upon this question, there is very great conflict of authorities, some cases restricting the power of the agents to the most narrow limits of the express terms of their appointments, and circumscribing

it strictly by the restrictions imposed by the principals, the insurance companies. But the more recent cases support the contrary view, and are in consonance with the doctrines we have attempted to maintain in this opinion.

As an illustration of the progress of the authorities upon this question, it may be mentioned, that *Rowley* v. *The Empire Ins. Co.*, above cited, which was decided in 1867, overrules five prior cases adjudged in the courts of New York, and is supported by only one older case in the reports of that State, viz., *Plumb* v. *The Cattaraugus Ins. Co.*, 18 N. Y. 392. These later decisions are in har-mony with reason and sound public policy, in view of the manner of conducting the business of insurance through a system of agencies far distant from the place of business of the corporations. While it is true that these companies transact business only through their agents at distant points, it is also true, that much of their business is acquired through the diligence, skill and capacity of these agents, and that parties effecting insurance rely in a great measure upon the representations made by them as to the rights and obligations of the respective parties to the policies, and are controlled in the care of the insured property by their directions. The acts of these agents, in all matters pertaining to the proper business they are appointed to transact, should bind their principals, unless contrary to restrictions of their powers, brought to the knowledge of those with whom they deal.

It is argued, that, inasmuch as by the restrictions imposed on the power of the agent by custom, as well as by the rules of the company, he can make no change in the printed conditions of the policy, therefore he had no authority to waive a forfeiture of such terms, or dispense with their performance. Without determ-ining whether this could be done by agreement at the

time the policy was issued, we are clearly of the opinion, that such restriction of authority in no way affects his power so to do after the policy is issued, in a proper case, and without fraud on his part, or by the assured.

The distinctions between omitting a condition required by the terms of his authority, and by custom, to be introduced into the policy, and the waiver of such condition for a proper cause, after the policy had been executed, are obvious.

It has been held that an agent intrusted with blank policies, to be filled up and countersigned by him, may bind the underwriter by new clauses or conditions inserted by the agent before issuing the policy. 2 Phillips' Ins. 528, § 1877; *Gloucester Manufacturing Co.* v. *Howard*, 5 Gray, 497.

VIII. By the terms of the policy the underwriters reserved the right to cancel it upon the risk being

10. —— waiver arising from failure to cancel. increased, or for any other cause, "by paying to the assured the unexpired premium *pro rata.*" The point is made by the plaintiff, that if the risk be increased, of which the underwriters have notice, and the right to cancel is not exercised, this amounts to a waiver of the forfeiture incident to a breach of the condition against increase of risk. The decision of this question is not necessary, as the case is determined without it. But, for myself, I am free to admit the force of the position, in view of the peculiar facts of the case, and that I believe it is supported by sound reason. Without discussing the legal principles upon which it is founded, it will readily be seen to be in harmony with our ideas of fair and honest dealing. The agent had full notice of the increase of the risk, obtained upon an examination of the property, made in discharge of his duty, for the express purpose of determining whether there had been such increase. This notice to the agent bound the com-

panies. *Keenan* v. *Missouri State Mutual Ins. Co.*, 12 Iowa, 131. If the agent determined that the risk was increased, his duty to his principals and good faith toward the assured, and every principle of honesty, required him to cancel the policy and advise the assured of the fact. It was bad faith of the darkest hue for the agent, upon determining that the risk was increased, so to act and speak as to induce the assured to believe that the policy continued to cover the property. The companies thereby retained the money paid as premiums, which they had not earned, and which their contract required should be repaid to the assured upon canceling the policy, and induced their confiding customer to trust for indemnity, to the extent of many thousand dollars, for loss of his property, upon a contract which they had predetermined was avoided, and upon which, according to their interpretation of the law, he could not recover one cent. Such a course of dealing indicates a reckless and fraudulent spirit of gain, which will hazard the property of others to the value of tens of thousands in order to secure an inconsiderable and paltry sum. On the other hand, if, upon such examination of the property, the agent honestly determined that there was not such increase of risk as required the exercise of his power to cancel in order to protect the interest of his principals, and acted upon that determination, whereby the plaintiff was induced to rely upon the policy as a valid, binding contract, the underwriters ought to be bound by such determination and acts of their agent, and ought not to be permitted to set up, as a breach of the conditions, the very things which the agent decided were not breaches. In such a case, while the agent would be relieved of the charge of dishonesty, it would be successfully sustained against his principals. In whatever light we may view the facts that the increase of the risk was fully known to

the agent, and no steps were taken to cancel the policy in accordance with its terms, they involve bad faith and deceit, whereby one party in order to realize a small sum puts at hazard great interests of another, a course of dealing repulsive to all right notions of justice, and nowhere practiced among honest men.

IX. It is argued by the defendant's counsel, that the waiver of the breach of the condition of the policy, on account of the rustic window-shade manufactory, extended only to the acts in violation of the terms of the policy done before such alleged waiver, and that the condition continued to be daily violated by the continuance of the cause of the increase of risk; and that, as it is not pretended that there was any waiver of the breaches resulting therefrom, the policy is thereby avoided. The error of this argument is apparent. The waiver extended to all breaches resulting from the manufacture of rustic window shades in the building insured, and the parties in all their intercourse concerning the increase of the risk, and by their acts touching the same, had reference to the continuation of the manufactory, and of course contemplated the waiver of the breaches resulting therefrom, and the dispensation of the conditions of the policy prohibiting it.

*11. —— extent of waiver.*

X. The policy expressly prohibited the keeping of benzine upon the premises insured. There was evidence tending to prove that this fluid was necessary in the preparation of the paints and varnishes used in the manufacture of rustic window shades, and that, at the time of the fire, it was kept for that purpose upon the premises, in tin cans, in quantities not exceeding two gallons. The evidence also tended to prove that the agent gave permission for keeping benzine for the purposes and in the manner and quantities aforesaid. This permission was given, as it is claimed, at the

*12. —— consent to certain occupancy carries incidents.*

time the alleged consent was given to the continuation of the window-shade manufactory. The court instructed the jury, substantially, that a consent to the occupation of the building for the manufactory implied a consent to the use of such articles as were necessary to be used in the business. This instruction was clearly correct. The consent to the manufacture of the window-shades, implied a consent to the use of benzine if it was necessary or commonly used in making those articles; otherwise a direct permission to continue the manufactory would be defeated by the prohibition in the policy.

This permission operated to dispense with the prohibition. In *Citizens' Ins. Co.* v. *McLaughlin*, 6 Am. Law Register, N. S. 374, lately decided in the Supreme Court of Pennsylvania, this doctrine is recognized. In that case the policy covered a patent-leather manufactory, and the keeping of benzine upon the premises was prohibited, and confined to a shed detached therefrom. It was a necessary article in the manfacture of patent-leather, and was ordinarily carried in a bucket, containing three or four gallons, into the building insured. The benzine took fire in the bucket and the building was consumed. The court holds that the permission to use the building for a patent-leather manufactory, carried with it the permission to use all articles necessary to the business, and dispensed with the prohibition expressed in the policy. The same rule is announced in the following cases: *Harper* v. *Albany Ins. Co.*, 17 N. Y. 194; *Harper* v. *N. Y. Ins. Co.*, 22 id. 441; *Pindar* v. *Kings County Ins. Co.*, 36 id. 648.

XI. The evidence tended to prove that the agent of the underwriters, at the time he made an examination of the building, directed a certain iron door to be put up, and that either the tenants or the agent of the plaintiff agreed to comply with this requirement. It seems that no time was specified in

13. —— conditions connected with change of occupancy.

which it should be done. An order was given for the door, but it was not completed and put up at the time of the fire. Upon this evidence are based the sixth and seventh interrogatories to the jury by the defendant, and the fifth propounded by the court.

The special finding in response to the sixth question of defendant, while it makes the continuance of the insurance conditional upon the door being put in, fixes no time when it was to be done. It simply shows that the agent agreed to carry the risk if an iron-door should be put in. The agreement to put in the door was not a condition precedent to the continuance of the insurance. Of course the plaintiff had a reasonable time in which to comply with his agreement, and the response to the fifth question shows that he had used all reasonable efforts to do so before the fire, and had, therefore, sufficiently complied with his part of the agreement. These findings are consistent with each other, and not inconsistent with the general verdict. Plaintiff's motion to set aside the finding upon the sixth question of defendant was properly overruled.

In the light of the doctrines above announced, we find no error in the rulings of the court upon the admission of evidence and the submission of questions to the jury for special findings. It is not necessary to state the special questions raised, or evidence admitted or excluded. Neither do we find error in the giving or refusal to give instructions asked by the parties. Those given are in harmony with the principles of this opinion; those refused are not. It would answer no useful purpose to refer to them more fully. The verdict, as well as the special findings, are well supported by the evidence. The motions to set them aside were properly overruled.

                                        Affirmed.

The importance and somewhat leading character of this case, and the interesting nature of the questions discussed, have induced the

Viele v. Germania Insurance Co.

Reporter, believing it would be of use to the profession, and facilitate future investigation, to publish the following valuable note written by John N. Rogers, Esq., for the Western Jurist.

The same considerations have induced the publication of briefs of counsel more than usually full.

NOTE. — This valuable case contains, it is believed, the most complete and comprehensive view to be found in the decisions of the courts of the law of waiver of conditions, or of forfeiture by breach of conditions, in policies of insurance; a subject of great and increasing practical importance, in view of the numerous, complex and frequently far from perspicuous conditions inserted in those instruments, and the frequent instances of failure on the part of the insured to comply strictly with their terms. While there are many reported cases in which particular acts or conduct by insurers or their agents have been held to amount to, or to be evidence of, such waiver, in the present case the subject is discussed upon principle, and rules of general application are laid down, as to what is capable of waiver, and how and by whom a waiver may be made, which applied to particular cases, will go far to solve most questions usually arising in respect to waiver, in suits on fire policies.

The foundation principle of the decision may, in a general form, be thus stated: when a written contract between two parties, imposing obligations to continue through a given period of time, contains a condition intended for the benefit of one party only, and providing that on its breach during such period, the written instrument shall be void (or words of that import), the legal effect is, that, on the happening of a breach, the contract, so far as it imposes obligations on the party for whose protection the condition is intended, becomes void only on the election of such party so to treat it. The other party cannot take advantage of his own breach to avoid the contract. It follows, of course, that the forfeiture incurred by the breach may be waived by the party entitled to enforce it; and that such waiver, being simply the exercise of the right to elect whether to terminate or continue the contract will be effected by any act or conduct toward the other party, with knowledge of the breach, recognizing or treating the contract as still continuing in force. The result is, that the rights of both parties are the same as though no breach had occurred. The waiver, not being in itself a new contract, nor a change of the terms of the original contract, but merely the legal consequence of an election not to avoid such contract on account of a specific breach of condition, requires neither writing nor consideration. And this is equally so, where (as in the principal case) the condition prohibits the doing

of some act, without the written consent of the other party. In such case the absence of written consent is simply an essential element in the breach of condition, without which there would be no breach, and nothing requiring a waiver. The consequences of a breach of such condition, when it has happened, may be dispensed with in any mode which would be effectual in case of a condition otherwise framed.

The above principles have been, perhaps, most frequently illustrated and applied in the law of landlord and tenant. Nothing is better settled than that if the landlord, with knowledge of breach of a condition by the tenant, which by the terms of the lease avoids it, does any act treating the tenancy as still continuing, he waives the forfeiture. And though a distinction was formerly taken in this respect between leases for life, which, creating a freehold, requires a re-entry to take advantage of a breach of condition and leases for years — it being then held, in respect to the latter class, that the lease became void by the mere happening of the breach and could not be set up again by a waiver thereof — the modern decisions have exploded the distinction, holding that in either case, the lease becomes void only on the lessor's electing so to treat it, and that the only difference between a lease for life and one for years is, that in case of the former, that election must be manifested by a formal entry, which is unnecessary in case of a lease for years. 1 Smith's Lead. Cas., notes to *Dumpor's case*, where the subject is fully discussed and authorities cited.

In *Smith* v. *Saratoga Ins. Co.* (3 Hill, 508), it was decided, wholly on the old authorities, as to leases for years, that a breach of condition in a fire policy, rendering it, by its terms, "void," could not be subsequently waived so as to continue the policy in force. This case, however, has been frequently disapproved (see 2 Am. Lead. Cas., p. 624; *Keenan* v. *Mo. State Mut. Ins. Co.*, 12 Iowa, 26), and was virtually overruled in the same court, in *Clark* v. *Jones*, 1 Den. 516, a case of a lease, in which BRONSON, J., who delivered the opinion in *Smith* v. *Saratoga Ins. Co.*, expressly abandons the doctrine there laid down, admitting that the modern decisions are against it. See also *Frost* v. *Saratoga Ins. Co.*, 5 Den. 154; *Viall* v. *Genesee Mut. Ins. Co.*, 19 Barb. 440; *Keenan* v. *Dubuque Mut. Ins. Co.*, 13 Iowa, 375; *Wing* v. *Harvey*, 27 Eng. Law & Eq., 140. A fair test of the question is afforded by the case of an insurance for a term of years, with a premium payable annually, in advance. If, immediately on a breach of a condition, which, by the terms of the policy, is to render it "void," and independent of any election by the insurer, the policy becomes extinct, it is plain, that the insured could, on this ground, successfully resist a suit by the insurers for subsequently accruing premiums. It seems clear, however, that no such defense could be maintained, and equally so, that the insurer, by

bringing such an action, with knowledge of the breach, would affirm the continuance of the insurance, and be estopped from setting up the breach as a defense against liability for a subsequent loss. See *Cartwright* v. *Gardner*, 5 Cush. 273, 281.

The applicability of the rule above stated, as to waiver of forfeitures, to the contract of insurance, is involved in and indeed constitutes the basis of the decisions holding that the existence of a policy, the conditions of which have been broken by the insured, rendering it by its terms "void," may nevertheless constitute a breach of the condition in another policy on the same property, prohibiting other insurance not notified to the insurers in such second policy. *Carpenter* v. *Prov. Wash. Ins. Co.*, 16 Pet. 495; *Bigler* v. *N. Y. Central Ins. Co.*, 22 N. Y. 402; *David* v. *Hartford Ins. Co.*, 13 Iowa, 69.

The Supreme Court of Massachusetts, while apparently, in *Cartwright* v. *Gardner* (*supra*), recognizing the rule as applied to other written contracts, have refused to apply it to insurance policies, and maintain, as to them, a doctrine directly contrary to the cases last cited. *Jackson* v. *Mass. Mut. Fire Ins. Co.*, 23 Pick. 418; *Clark* v. *N. E. Mut. Fire Ins. Co.*, 6 Cush. 342.

The weight both of authority and reasoning, however, would seem to be opposed to the Massachusetts doctrine, and no sound reason appears to exist for distinguishing the contract of insurance, in this respect, from other written contracts.

In *Cockerill* v. *Cincinnati Ins. Co.* (16 Ohio, 148), it is said, that by the law merchant, both the contract to insure and a waiver of a breach of condition in such contract, are required to be in writing. It is believed, however, that neither branch of this position is correct. In *Baptist Church* v. *Brooklyn Fire Ins. Co.* (19 N. Y. 305), it is expressly held, that, by the common law a verbal contract of insurance is valid; and to the same effect see *Commercial Ins. Co.* v. *Union Ins. Co.*, 19 How. 318; *Baxter* v. *Massasoit Ins. Co.*, 1 Allen, 294; *City of Davenport* v. *Peoria Ins. Co.*, 17 Iowa, 276. And even were this otherwise, since a waiver of a forfeiture is not a new contract to insure, but merely the legal consequence of the insurer's declared election to treat the insurance as continuing, notwithstanding the breach, on no sound principle can written evidence of such election be required. By the statutes of frauds, a writing is essential to a lease for longer than a specified term; but this has never been held to exclude parol evidence of a waiver by the lessor of a forfeiture of such lease, incurred by the lessee.

There is an obvious difference between waiving a forfeiture already incurred by a specific breach of condition, and waiving the condition itself prospectively. The former simply reinstates the contract, without changing its terms; the latter operates directly on the terms of the

contract, by eliminating the condition. Since no rule of law forbids a parol modification of a previous written contract, it follows, that a waiver of the condition itself, subsequent to the inception of the contract, equally with a waiver of a past breach of it, may be established by parol evidence. A different question arises, when matters preceding or concurrent with the inception of the policy, and resting in parol, are relied on to establish waiver of its written conditions. In Massachusetts (where the general course of decision on fire policies seems to be much stricter against the insured than elsewhere), such evidence is held inadmissible, as contradictory to the written contract. *Barrett* v. *Union Mut. Ins. Co.,* 7 Cush. 175; *Lee* v. *Howard Ins Co.,* 3 Gray, 583.

Whatever may be thought of these decisions, considered on principle, the weight of authority is decidedly the other way. *Sheldon* v. *Atlantic Ins. Co.,* 26 N. Y. 460; *Amos* v. *New York Union Ins. Co.,* 14 id. 253; *Boehen* v. *Williamsburgh Ins. Co.,* 35 id. 131; *Goit* v. *Nat. Prot. Ins. Co.,* 25 Barb. 189; *N. Y. Central Ins. Co.* v. *Nat. Prot. Ins. Co.,* 20 id. 468; *Peoria Ins. Co.* v. *Hall,* 12 Mich. 202; *Beal* v. *Park Ins. Co.,* 16 Wis. 241; *Insurance Company* v. *Rogers,* 12 id. 337; *Hough* v. *City Fire Ins. Co.,* 29 Conn. 10; *Anson* v. *Winneshiek Ins. Co.,* 23 Iowa, 84. In all these cases, parol evidence of conduct of the insurers or their agents, prior to or concurrent with the issuing of the policy, was held admissible to establish a waiver of conditions expressed therein. Some of them strikingly illustrate the view of waiver above taken, as being rather the legal result of acts or conduct of the party than itself an independent act; holding that issuing the policy, with knowledge at the time, by the insurers or their agent through whom the insurance was effected, that the building is occupied and intended to be occupied for a purpose prohibited by the terms of the policy, or that a prohibited article is kept on the premises, operates as a waiver of such condition in the policy, or (what amounts to the same thing) estops the insurers from setting up such occupation as a breach of the condition. *Peoria Ins. Co.* v. *Hall, Beal* v. *Park Ins. Co., Insurance Company* v. *Rogers, ubi supra.* The cases holding the insurers to be estopped from denying the correctness of the representations contained in the written application for insurance, when such application was prepared by their agent, and contains misstatements, or omits to disclose material facts, through the fault of such agent, rest on the same principle. *Rowley* v. *Empire Ins. Co.,* 36 N. Y. 550; *Plumb* v. *Cattaraugus Ins. Co.,* 18 N. Y. 392. *Jennings* v. *Chenango Co. Ins. Co.,* 2 Den. 75, holding a contrary doctrine, must be considered as overruled by the cases last cited.

The decision in the principal case as to the powers of the agent of the insurers is of very great practical importance, since the business of fire insurance, particularly the Western States, is very largely trans-

acted by foreign corporations, through their local agents, who in fact exercise almost unlimited powers as representing the companies, and are the only parties with whom the insured hold direct communication. There can be no doubt that the general tendency of the latest decisions has been more and more in favor of holding insurance companies to responsibility for the conduct of the agents through whom their business is transacted. *Warner* v. *Peoria Ins. Co.*, 12 Wis. 318; *Beal* v. *Park Ins. Co.*, 16 id. 241; *N. E. Fire & Marine Ins. Co.* v. *Schettler*, 38 Ill. 166; *Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550; *Anson* v. *Winneshiek Ins. Co.*, 23 Iowa, 84. The case of *Rowley* v. *Empire Ins. Co.* is a remarkable illustration of the progress being made in this direction. It is there held (overruling several prior cases to the contrary) that the insurer was estopped to deny the correctness of the representations in the written application signed by the insured, where an error in such application was due to the agent of the company, authorized simply "to take applications for insurance," and who prepared the application in question. FULLERTON, J., delivering the opinion of the court, says: "The conditions of insurance plainly contemplate that it" (the application) "should be in writing, and such was the intention of the parties. When, therefore, was the duty which the agent owed to the company at an end, so that he ceased to bind his principal? It is not establishing a harsh or unreasonable rule in reference to insurance companies, to hold that their agents, authorized "to take applications for insurance," are acting within the scope of their authority, in every thing which they do which may be necessary to complete such applications. I must therefore regard Dean as in the act of taking the application when he was filling up the blank signed by the plaintiff, and therefore acting on behalf of the defendant. Any other rule would be fraught with mischief. Insurance companies send out an army of agents to solicit business. Property holders are waited upon by them at their residences; and it is not going too far to say that many of the applicants would be unable to make a proper application and survey to meet the rigid and elaborate requirements of these corporations, while experience shows that they are not expected to do so. Hence these agents render such services as are necessary to enable the contracting parties to attain their respective objects, the one to insure, and the other to become insured against fire. To hold that in performing these preliminary labors touching the very business which must necessarily be transacted before a policy can be effected, the insurance broker becomes the agent of the applicant for insurance, would seem to be an unnecessary and undesirable refinement. I repeat, that, in performing these preliminary labors, the agent is engaged in taking the applications, which is strictly within his duty, and the principal should be held responsible for any error he may commit."

Vol. XXVI. — 10

Viele v. Germania Insurance Co.

This case is approved and followed in *Anson* v. *Winneshiek Ins. Co.*, *ubi supra.* These decisions do not, perhaps, necessarily conflict with *Ayers* v. *Hartford Ins. Co.* (17 Iowa, 176, 190), where it is held, that, if the authority of the agent is only "to receive and forward applications," the company is not responsible for his errors in drawing up the application ; while, if he had power to take risks, and did, in fact, take the risk in question, the insurers would be estopped from disputing the correctness of the representations contained in the application prepared by him. It must be admitted, however, that the distinction between the power "to take applications," and the power "to receive and forward applications," is a very fine one. See also, *Bartholomew* v. *Farmers' & Merchants' Ins. Co.*, 25 Iowa, 507.

To this late course of decision as to the responsibility of insurance companies for acts of their agents, the Massachusetts cases, again, are a marked exception. Not only is it there held, that in drawing up the application the agent is in all cases to be regarded as the agent of the applicant, whose duty it is to see that it is correctly framed (*Lowell* v. *Middlesex Mutual Fire Insurance Co.*, 8 Cush. 127 ; *Forbes* v. *Agawam Ins. Co.*, 9 id. 470 ; *Lee* v. *Howard Ins. Co.*, 3 Gray, 583) ; but a peculiar doctrine has been established in respect to mutual insurance companies, viz.: that neither their agents nor officers have any power to waive conditions of insurance, imposed by the policy or by-laws of the company (*Hale* v. *Mechanics' Ins. Co.*, 6 Gray, 169 ; *Brewer* v. *Chelsea Mutual Ins. Co.*, 14 id. 203 ; *Baxter* v. *Chelsea Mutual Ins. Co.*, 1 Allen, 294 ; *Tebbetts* v. *Hamilton Mutual Ins. Co.*, 3 id. 569 ; *Mulrey* v. *Shawmut Ins. Co.*, 4 id. 116 ; *Murphy* v. *People's Mutual Ins. Co.*, 7 id. 239 ; *Evans* v. *Trimountain Mutual Ins. Co.*, 9 id. 329), though they may waive formal preliminary proofs of loss. *Priest* v. *Citizens Mutual Ins. Co.*, 3 Allen, 602. These decisions appear to be based on the ground that in mutual companies the insured parties constitute the only members, and are affected with notice of and bound by their rules, which are for the common benefit and protection of all, and that the officers have no other powers than those given by the by-laws.

In *Worcester Bank* v. *Hartford Ins. Co.* (11 Cush. 265), there appears to be manifested a disposition (so far as can be gathered from the very brief and unsatisfactory opinion delivered) to apply a similar rule to stock companies. On the whole, the Massachusetts cases on the subjects discussed in this note may be fairly said to stand apart by themselves, and to breathe a spirit of sternness toward the insured, in marked contrast with the tone of decision in New York, and still more so with that prevailing in the courts of the Western States.