E. L. WATROUS, Appellant, v. DES MOINES INSURANCE COMPANY.

**Insurance:** RATES: AUTHORITY OF AGENT: LIABILITY OF COMPANY. Where an insured knew, at the time the recording agent issued the policy in suit, that the agent had no authority to write the insurance at the rate specified, and their conversation prior to issuance of the policy was in effect that the insured would accept a certain rate and the agent would procure it if he could, and upon issuance of the policy the agent forwarded it to the company for approval, which was refused and the policy returned cancelled, no liability thereon for a loss existed.

*Appeal from Polk District Court.*—HON. JESSE A. MILLER, Judge.

SATURDAY, NOVEMBER 20, 1909.

SUIT on a policy of fire insurance claimed to have been issued by the defendant company. There was a directed verdict for the defendant, and, from a judgment dismissing his action, plaintiff appeals. *Affirmed.*

*Guernsey, Parker & Miller,* for appellant.

*Read & Read,* for appellee.

SHERWIN, J. — The Baird-Chenoweth-Taylor-Tuttle Company was a recording agent for the defendant at the time of the transactions in question. At the time of the fire in November, 1906, Mr. Watrous occupied premises

on Ninth Street, where he had taken his stock but a short time before from a location on Sixth Avenue. About the 1st of January, 1906, the defendant issued a policy for one year covering the stock in question, then on Sixth Avenue, at the rate of $1.50 per hundred. After the plaintiff's removal to Ninth Street, he had the policy of January 1 canceled because the defendant would not reduce the rate thereon, although Mr. Taylor, of the agency firm, advised him that the rate of $1.50 was reasonable for even the new location, and that the company would not reduce it below $1.25 in any event. The plaintiff was not willing to pay $1.25, and a cancellation of the policy followed. This was about the last of August, 1906. About the 1st of October Mr. Taylor called the plaintiff up on the telephone, and asked him if he had insured yet. The plaintiff answered that he had not, whereupon the following conversation, in substance, took place between them, as related by the plaintiff: The plaintiff said he wanted insurance if he could get the right rate. Taylor said: "What do you consider a right rate?" I said, "Well, I am getting the building up town written at seventy-five cents, and have had it written as low as fifty cents, . . . and I think I ought to get a fifty-cent rate here." He said: "I don't think I could get it, but I think I could get you a dollar rate." I said: "I don't want it at a dollar." He said: "Well, would you take it at seventy-five cents?" and I said, "Yes; if you can get it at seventy-five cents I will take it." He said, "All right, then, I will write it up, and see if I can make it stick." In this conversation over the telephone nothing was said as to the defendant company, nor as to any other company. Following this conversation Taylor wrote a policy in the defendant company, fixing the rate at seventy-five cents, and forwarded it to the company for approval. The policy was immediately rejected by the defendant, and marked canceled, nor was it ever delivered to the plaintiff. The fire occurred about six weeks later.

While the Baird-Chenoweth-Taylor-Tuttle Company was a recording agency, it had no power or authority to issue a policy to the plaintiff at the rate demanded by him, and this the plaintiff knew because the company had but a short time before refused to give him a rate lower than $1.25, and even if Taylor had intended to make a contract for the defendant at a seventy-five cent rate, the defendant would not be bound because plaintiff knew that Taylor was exceeding his authority in attempting to so bind his principal. *Alman et al. v. Insurance Co.,* 27 Iowa, 203; *Viele v. Insurance Co.,* 26 Iowa, 9. But, aside from the legal proposition stated above, the conversation between the plaintiff and Taylor on the 1st of October, as related by the plaintiff himself, conclusively shows that no contract of insurance was then entered into. The plaintiff told Taylor that if he (Taylor) could get it at seventy-five cents he would take it, and Taylor in substance said he would try to get it at that rate. The fact that Taylor did write a policy naming such rate is of no consequence in the light of the understanding between them. According to the plaintiff's own testimony, Taylor did no more than to undertake to secure for him insurance at the low rate of seventy-five cents, and hence there was no question to go to the jury.

The judgment should be, and it is, *affirmed.*